Phyllis A. TANNLER, Petitioner-Respondent,†

v.

STATE DEPARTMENT OF HEALTH & SOCIAL SERVICES,
Respondent-Appellant.

Court of Appeals

*No. 96–0118. Submitted on briefs October 9, 1996.—Decided
November 12, 1996.*

(Also reported in 557 N.W.2d 434.)

†Petition to review granted.

On behalf of respondent-appellant, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Donald P. Johns*, assistant attorney general.

On behalf of petitioner-respondent, the cause was submitted on the brief of *Scott Thompson* and *Kittelsen, Barry, Ross, Wellington and Thompson* of Monroe.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   The State Department of Health and Social Services appeals the decision and order of the circuit court reversing the department's final decision and order terminating Phyllis A. Tannler's eligibility for Medical Assistance (MA) benefits. The department argues that its decision is entitled to deference and that the court misinterpreted the relevant statutes. We reverse the circuit court and affirm the department's decision.

Medical Assistance, also known as "Medicaid," is a joint federal-state program whose purpose is to provide medical services to the poor and needy. 42 U.S.C. § 1396, et seq. To be eligible to receive MA benefits, an individual must meet strict income and asset limits. In determining whether an individual is entitled to benefits, a state may only consider the income and assets actually "available" to the applicant. 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 435.845. An individual is prohibited from divesting himself or herself of assets in order to meet these limits. Divestment resulting in MA ineligibility is defined as the disposal of resources or assets at less than fair market value within certain time periods relative to the application for MA or the institutionalization of the person making the disposition. Section 49.453(2), STATS.; WIS. ADM. CODE § HSS 103.065(4). The definition of "assets" thus becomes relevant in divestment cases. The relevant definition of "assets" in Wisconsin is given in § 49.453(1)(a), STATS., which states that " 'Assets' has the meaning given in 42

USC 1396p(e)(1)." That section defines assets as follows:

> The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action—
>
> (A) by the individual or such individual's spouse . . . .

The relevant facts are not in dispute. Phyllis was initially determined to be eligible for MA benefits in 1993 when a "community spouse asset allocation" was completed, transferring certain assets to her husband Adolph. Adolph died in 1994 leaving a will that bequeathed all his assets and property to a grandson, while leaving Phyllis nothing. Phyllis did not object to the admission of the will to probate, nor did she file any elections or requests for classification of marital property or allowances.

Phyllis continued to receive MA benefits until 1995 when the department notified her that it was terminating her eligibility because Phyllis "is refusing to take action to claim the statutorily required portion of a deceased spouse's estate." A hearing was held after which the hearing examiner issued a proposed decision concluding that Phyllis' failure to assert a claim against Adolph's estate was not a divestment of an asset. The examiner cited the definition of "asset" contained in 42 U.S.C. § 1396p(e)(1). The examiner concluded that Phyllis did not divest herself of her share of Adolph's estate "because of action" on her part. To the contrary, the examiner concluded that she "took no action to avoid receiving" the share and "[a]n action

is simply not the same thing as inaction and the terms cannot be used interchangeably."

The department reversed the hearing examiner's proposed decision and terminated Phyllis' MA eligibility. The department relied in part on the interpretation of 42 U.S.C. § 1396p(e)(1) contained in the *MA Handbook*, which stated that divestment actions that cause income or assets not to be received "because of action" of the spouse include "[r]efusing to take action to claim the statutorily required portion of a deceased spouse's or parent's estate." The department further considered the distinction between action and inaction in this case to be "one without a difference."

Subsequently, Phyllis sought judicial review of the department's decision and order. The court reversed the department's decision and order, finding that the department erroneously interpreted 42 U.S.C. § 1396p(e)(1) and that a correct interpretation compelled that the department's action be set aside. The department now appeals.

■■■■■

In a ch. 227, STATS., appeal, we review the agency's decision and therefore give no deference to the decision of the trial court. *Soo L. R.R. Co. v. Office of Comm'r of Transp.*, 170 Wis. 2d 543, 549, 489 N.W.2d 672, 674 (Ct. App. 1992). Interpretation of a statute and its application to the undisputed facts are questions of law we review de novo. *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990). We first look to the statutory language and, if that language is unambiguous, we construe the statute in accordance with its ordinary meaning. *Riverwood Park, Inc. v. Central Ready-Mixed Concrete, Inc.*, 195 Wis. 2d 821, 828, 536 N.W.2d 722, 724 (Ct. App. 1995). A statute is ambiguous if it is capable of being understood by reasonably

well-informed persons as having two or more different meanings. *Id.* If the statute is ambiguous, we may examine its content, subject matter, scope, history and purpose to determine legislative intent. *Id.*

We conclude that two reasonable persons could attribute different meanings to the word "action" as used in the definition of assets in the Medicaid statute, 42 U.S.C. § 1396p(e)(1). It could mean, as Phyllis contends, only affirmative or active conduct. It could mean, as the department contends, "acts of omission" as well. The department's contention is not unreasonable. The law routinely treats a failure to act as "action" for the purpose of imposing consequences. Thus, for example, the legislature's grant of governmental immunity under § 893.80(4), STATS., for torts of agents and employees speaks of "**acts** done in their official capacity . . . ." (Emphasis added.) Nevertheless, when courts consider the limits upon that immunity, they treat a failure to act in the same light as active conduct. *See, e.g., Domino v. Walworth County*, 118 Wis. 2d 488, 347 N.W.2d 917 (Ct. App. 1984) (question of governmental immunity for deputy sheriff's failure to act to effect removal of a fallen tree across road).

The department's determination that Phyllis divested herself of an asset under the terms of § 1396p(e)(1) is a legal conclusion. We are not bound by an agency's conclusions of law. *See Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 244, 493 N.W.2d 68, 73 (1992). We do, however, defer to an agency's legal conclusions in certain instances:

> First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled

391

to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented.

*Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992) (citations omitted).

The department argues that we should give its interpretation of 42 U.S.C. § 1396p(e)(1) great weight. However, we conclude that the appropriate standard is the middle standard, because while our research uncovered no cases directly on point, the *MA Handbook* does speak directly to the issue presented by this case. Because the *MA Handbook* is designed to assist state and local agencies to implement the federal-state MA program, we conclude that its provisions are persuasive in resolving disputes such as the one before the court.[1] Accordingly, we give the department's interpretation of § 1396p(e)(1) due weight when interpreting its language.

---

[1] We recognize that we are not bound by the terms of the *MA Handbook* and that where a handbook or manual is inconsistent with a statute, this court must apply the statute. *See Zimmerman v. DHSS*, 169 Wis. 2d 498, 505, 485 N.W.2d 290, 292 (Ct. App. 1992). However, because we conclude that 42 U.S.C. § 1396p(e)(1) is ambiguous in the context of this case, we appropriately turn to other sources for aid in interpreting its provisions. As we discuss below, we conclude that the quoted portion of the *MA Handbook* is consistent with the purpose behind § 1396p(e)(1).

■

We conclude that the reference to "action" in 42 U.S.C. § 1396p(e)(1) is ambiguous. While it requires that an individual take "action," Phyllis argues that "action" means the affirmative performance of an act. The department argues that Phyllis' election not to file a claim is sufficient to constitute action.

■

Because the statute is ambiguous, we consider its purpose. Medical assistance is a joint federal-state program aimed at providing medical services to the poor and needy. 42 U.S.C. § 1396, et seq. The divestment provisions of that program are an attempt to prevent the government, and therefore the taxpayers, from having to subsidize the medical care of individuals who are, but for the divestment, able to pay the cost of their own care. The department's interpretation of § 1396p(e)(1) is consistent with this purpose: a failure to file a claim for one's statutorily-required share of an estate results in the government subsidizing the health care of that individual when, but for the failure to file, the individual would be able to pay the cost of her own care. Giving due weight to the department's final decision and order, we conclude that Phyllis' decision not to file a claim against Adolph's will was an action within the meaning of § 1396p(e)(1) because her decision resulted in exactly the type of divestment that provision was designed to address.[2] We decline to adopt a construction of that section that would defeat its legislative purpose. *See Town of De Pere v. City of De Pere,*

[2] The liquid asset limit for MA eligibility is $2,000. 20 C.F.R. § 416.1205(c); § 49.47(4)(b)3g, STATS. It is undisputed that the portion of Adolph's estate to which Phyllis was entitled would have made her ineligible for MA benefits.

184 Wis. 2d 278, 283-84, 516 N.W.2d 1, 2-3 (Ct. App. 1994).

Finally, we note that § 1396p(e)(1), also defines "assets" as "income or resources which the individual . . . is entitled to but does not receive because of action . . . by the . . . individual's spouse . . . ." In this case, Adolph drafted a will that failed to leave to Phyllis property to which she was entitled under Wisconsin law. Neither party discusses whether Adolph's conduct constituted "action by the . . . individual's spouse," thereby resulting in Phyllis' ineligibility. We therefore decline to address the question further.

*By the Court.*—Order reversed.

CANE, P.J. (*dissenting*). I respectfully dissent. Divestment resulting in medical assistance ineligibility is defined as the disposal of resources or assets at less than fair market value within certain time periods relative to the application for medical assistance benefits or the institutionalization of the person making the disposition. Section 49.453(2), STATS.[1] In essence, indi-

---

[1] Section 49.453(2), STATS., provides in relevant part:

(2)   Ineligibility for medical assistance for certain services.

(a)   *Institutionalized individuals.* Except as provided in sub. (8), if an institutionalized individual or his or her spouse, or another person acting on behalf of the institutionalized individual or his or her spouse, transfers assets for less than fair market value on or after the institutionalized individual's look-back date, the institutionalized individual is ineligible for medical assistance for the following services for the period specified under sub. (3):
1.   For nursing facility services.
2.   For a level of care in a medical institutional equivalent to that of a nursing facility.
3.   For services under a waiver under 42 USC 1396n.

(b)   *Noninstitutionalized individuals.* Except as provided in sub. (8), if a noninstitutionalized individual or his or her spouse, or

viduals cannot take some action to divest themselves of an asset in order to become or remain eligible for medical assistance. Section 49.453(1)(a), STATS.[2]

Action is defined as "Conduct; behavior; something done; the condition of acting; an act or series of acts." BLACK'S LAW DICTIONARY 28 (6th ed. 1990). The term act is defined as an external manifestation of the actor's will. "In its most general sense, this noun signifies something done voluntarily by a person; . . . In a more technical sense, it means something done voluntarily by a person, and of such a nature that certain legal consequences attach to it." *Id.* at 25. Similarly, WEBSTER'S NEW COLLEGIATE DICTIONARY 12 (1980), defines action as "the bringing about of an alteration by force",

---

another person acting on behalf of the noninstitutionalized individual or his or her spouse, transfers assets for less than fair market value on or after the noninstitutionalized individual's look-back date, the noninstitutionalized individual is ineligible for medical assistance for the following services for the period specified under sub. (3):

1. Services that are described in 42 USC 1396d(a)(7), (22) or (24).

2. Other long-term care services specified by the department by rule.

[2] Section 49.453(1)(a), STATS., provides that "assets" has the meaning given in 42 U.S.C. § 1396p(e)(1) (1995), which states:

The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action—

(A) by the individual or such individual's spouse,

(B) by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse, or

(C) by any person, including any court or administrative body, acting at the direction or upon the request of the individual or such individual's spouse.

"an act of will", and "a thing accomplished." As the circuit court noted, nowhere in these definitions is there expressed the concept of passivity, resignation or acceptance. To the contrary, all of the synonyms denote just the opposite: an act of performance.

One must keep in mind that Phyllis Tannler did nothing in this case. She did not dispose or divest herself of any assets in order to receive medical assistance benefits. Simply put, Phyllis's husband willed his estate to a grandson and the grandson's wife. In order for Phyllis to claim a share of her husband's estate, she is required to assert a claim against her husband's estate. If she does nothing, the estate passes on to the named beneficiaries. She did nothing. The department reasons that by electing not to file a claim against her husband's estate, Phyllis was taking an action to divest herself of an asset because the decision not to file such a claim is an act in itself. I disagree.

Were this a situation where Phyllis had been gifted a share of her husband's estate and she refused to accept the gift, I would agree with the department. In that type of a situation, she would have been required to take some action to divest herself of an asset in order to remain eligible for medical assistance. However, this is not even a gift requiring that she take some action to refuse. Therefore, I disagree with the majority and conclude that Phyllis took no action to divest herself of an asset.