Phyllis A. TANNLER, Petitioner-Respondent-Petitioner,

v.

WISCONSIN DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Respondent-Appellant.

Supreme Court

*No. 96–0118. Oral argument May 30, 1997.—Decided June 24, 1997.*

(Also reported in 564 N.W.2d 735.)

ABRAHAMSON, C.J., concurs.

For the petitioner-respondent-petitioner, there was a brief by *Scott Thompson* and *Kittelsen, Barry, Ross, Wellington and Thompson*, Monroe and oral argument by *Scott Thompson*.

For the respondent-appellant the cause was argued by *Maryann Sumi*, assistant attorney general, with whom on the brief was *Steven E.* Tinker, assistant attorney general and James *E. Doyle*, attorney general.

¶ 1.   DONALD W. STEINMETZ, J.   The issue in this case is whether an institutionalized person's fail-

ure to assert a claim against his or her deceased "community spouse's"[1] estate constitutes a divestment under the Medical Assistance (MA) program. We conclude that the failure to make a spousal election is an "action" for purposes of determining MA eligibility under Wis. Stat. § 49.453[2] as defined by 42 USC § 1396p(e)(1).[3] We therefore hold that the failure of an institutionalized spouse to assert a claim against the estate of his or her deceased spouse constitutes a divestment for purposes of determining MA eligibility.[4]

---

[1] A "community spouse" is a person who is married to an institutionalized person but is not himself or herself an institutionalized person. HSS § 103.065(3)(b); *Medical Assistance Handbook*, Section 23.2.1.

[2] Wis. Stat. § 49.453 provides as follows:

> [I]f an institutionalized individual or his or her spouse, or another person acting on behalf of the institutionalized individual or his or her spouse, transfers assets for less than fair market value on or after the institutionalized individual's look-back date, the institutionalized individual is ineligible for medical assistance. . . .

Wis. Stat. § 49.453(2).

The statute further provides in relevant part that "[i]n this section. . .'[a]ssets' has the meaning given in 42 USC 1396p(e)(1)." Wis. Stat. § 49.453(1)(a).

[3] 42 USC § 1396p(e)(1) provides as follows:

> The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action—
>     (A)   by the individual or the individual's spouse
>     (B)   by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse,. . . .

[4] We stress that the ultimate determination of MA eligibility lies with the Department of Health and Social Services. This

¶ 2. The relevant facts are not in dispute. The petitioner, Phyllis Tannler (Tannler), lives in a nursing home.[5] She has received MA since early in 1993. Tannler's husband, Adolph Tannler, died in 1994 leaving a will that bequeathed all of his assets, both real and personal property, to his grandson and his grandson's wife. Adolph left nothing to his wife. Tannler, represented by a guardian ad litem in the estate of her deceased husband, did not contest the will, nor did she file any elections or select any property passing under her husband's will.[6]

¶ 3. Tannler continued to receive MA benefits until 1995 when the respondent, Department of Health and Social Services (DHSS), informed Tannler that it was terminating her eligibility. DHSS asserted that Tannler's failure to contest, select, or elect against the will constituted a divestment of assets which rendered her ineligible for MA. A hearing on the matter was held April 12, 1995, and the hearing examiner issued a proposed decision that Tannler remain eligible for MA.

---

court is not in a position to determine what assets, if any, would be available to pay for Phyllis Tannler's medical care. The Department will have to examine the assets available in Mr. Tannler's estate to conclude what assets, if any, Phyllis Tannler could have selected or elected.

[5] Phyllis Tannler is an "institutionalized person" under the DHSS definition found in HSS 103.065(3)(d) and the *Medical Assistance Handbook*, Section 10.4.0, because she has resided in a medical institution for 30 or more consecutive days.

[6] Wisconsin law provides that a surviving spouse may elect up to one-half of his or her deceased spouse's deferred and augmented marital property. *See* Wis. Stat. §§ 861.02–.03. Additionally, the surviving spouse has the right to "select" other personal property of his or her deceased spouse, including items such as an automobile, jewelry, and furnishings. *See* Wis. Stat. § 861.33.

DHSS rejected this proposal and modified the decision. It concluded as follows:

> 1. The petitioner's acceptance of her husband's will transferring to a third person assets to which she was entitled under law was a disposal or a transfer of an asset.
>
> 2. The petitioner divested herself of an asset.

*The Matter of Phyllis A. Tannler*, DHSS Decision, August 17, 1995.

¶ 4. Tannler appealed. The Green County Circuit Court, Judge David G. Deininger, ordered that DHSS's action terminating Tannler's MA be set aside. The circuit court found that DHSS erroneously interpreted 42 USC § 1396p(e)(1).

¶ 5. DHSS appealed from the circuit court order. The court of appeals reversed. According due weight to DHSS's interpretation, the court held that the failure to make a spousal election was an "action" constituting divestment that resulted in MA ineligibility. *Tannler v. Department of Health and Social Servs.*, 206 Wis. 2d 385, 557 N.W.2d 434 (Ct. App. 1996).

¶ 6. This case involves the interpretation of Wis. Stat. § 49.453 and 42 USC § 1396p(e)(1). Interpretation of a statute and its application to undisputed facts are questions of law which this court reviews de novo. *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 82, 452 N.W.2d 368 (1990). This court is not bound by an agency's conclusions of law. *See Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 244, 493 N.W.2d 68 (1992). However, this court defers to agency decisions in certain instances. *See MCI Telecommunications Corp. v. State*, No. 95–0915, op. at 7 (S. Ct. May 13, 1997).

¶ 7. In reviewing agency interpretations, this court has applied three distinct levels of deference: great weight, due weight, and de novo review. *Id.*, citing *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659–60, 539 N.W.2d 98 (1995). In order to accord great weight deference, a court must conclude that: 1) the agency was charged by the legislature with the duty of administering the statute; 2) the interpretation of the agency is one of long-standing; 3) the agency employed its specialized knowledge or expertise in forming the interpretation; and 4) the agency's interpretation will provide consistency and uniformity in the application of the statute. *Id.*, citing *Jicha v. DILHR*, 169 Wis. 2d 284, 290, 485 N.W.2d 256 (1992).

¶ 8. If an agency conclusion does not meet all of the criteria necessary to accord it great weight deference, this court may give "due weight" deference to the agency conclusions. *Jicha*, 169 Wis. 2d at 290–91. Due weight deference, the middle level of review, is appropriate "if the agency decision is 'very nearly' one of first impression." *Id.* at 291. However, if the case is one of first impression for the agency and the agency lacks any special expertise, then the court must review the agency's conclusion de novo. *Id.*

¶ 9. As the court of appeals noted, the *Medical Assistance Handbook* produced by DHSS provides guidance on the issue presented by this case. The court stated that "[b]ecause the MA Handbook is designed to assist state and local agencies to implement the federal-state MA program, we conclude that its provisions are persuasive in resolving disputes such as the one before the court." *Tannler*, 206 Wis. 2d at 391. Tannler claims that this case presents an issue of first impression that should be subject to de novo review by this

184

court. While it appears from the lack of agency precedent that this case is one of first impression, the language found in the handbook indicates that the agency possesses a specialized knowledge on the issue of whether the failure to contest a will constitutes divestment for purposes of determining MA eligibility. Consequently, like the court of appeals, we also conclude that the findings of DHSS should be accorded due weight. Due weight deference means that this court will give some deference to the agency, but if a more reasonable interpretation exists, this court will adopt that interpretation.

¶ 10.   Wisconsin Statutes § 49.45(10) authorizes DHSS to "promulgate such rules as are consistent with its duties in administering medical assistance." Pursuant to this provision, DHSS instituted Wis. Admin. Code §§ HSS 101–108.[7] Section HSS 103.065(4) states that an applicant who disposes of a "resource" at less than fair market value within 30 months of his or her application for MA is deemed to have "divested." According to the code provisions and the statutes, divestment renders a party ineligible for MA. Wis. Admin. Code § HSS 103.065(4); Wis. Stat. § 49.453(2).

¶ 11.   In rendering its decision in this case, DHSS considered the language, purposes, and policies of the federal and state legislation regarding the MA program. It also looked to language found in the *MA Handbook* for guidance. Specifically, DHSS relied on an example found in the section of the *Handbook* covering divestment. The example provides as follows:

---

[7] Chapter HSS 101, et seq., have been renumbered Chapter HFS 101, et seq., effective January, 1997. However, the relevant events in this case occurred prior to January, 1997. Consequently, we use the "HSS" designation throughout this opinion.

It is also divestment if a person takes an action to avoid receiving income or assets s/he is entitled to. Actions which would cause income or assets not to be received include:

. . . .

6)   Refusing to take action to claim the statutorily required portion of a deceased spouse's or parent's estate. Count the action as a divestment only if:

a.   The value of the abandoned portion is clearly identified, and

b.   There is certainty that a legal claim action will be successful.

This includes situations in which the will of the institutionalized person's spouse precludes any inheritance for the institutionalized person. Under Wisconsin law, a person is entitled to a portion of his/her spouse's estate. *If the institutionalized person does not contest his/her spouse's will in this instance, the inaction may be divestment.*

*MA Handbook*, Section 14.2.1 (emphasis added).

¶ 12.   DHSS explains in its decision that even though the statutes speak in terms of "action" while the *Handbook* refers to "refusal to take action," the distinction is one without a difference. DHSS concludes that the statutes and the *Handbook* are consistent because both seek to terminate MA eligibility where a recipient or spouse somehow dispose of or avoid acceptance of an available asset. In accepting the will, DHSS concludes, Tannler acted in concert with her deceased husband in completing the divestment, and, therefore, she is ineligible for further MA benefits according to Wis. Stat. § 49.453(2).

¶ 13.   Tannler asserts that reliance on the *MA Handbook* is misplaced. Tannler claims that the rele-

vant provisions of this handbook should not be applied in this case because it is in conflict with the provisions of the controlling federal and state legislation. Specifically, Tannler objects to the *Handbook*'s use of the phrase "refusal to take action" in light of the fact that the statutes use the term "action." Because "action" is an unambiguous term, Tannler argues, this court must enforce the plain meaning of the term.

¶ 14.   We reject Tannler's arguments. This court concludes that the *MA Handbook* used by DHSS is consistent with the federal and state legislation regarding medical assistance. We further conclude that the term "action" as it is used in 42 U.S.C. § 1396p(e)(1) is an ambiguous term because there is more than one reasonable interpretation of the term.[8]

¶ 15.   The Department may use policies and guidelines to assist in the implementation of administrative rules provided they are consistent with state and federal legislation governing MA. As long as the document simply recites policies and guidelines, without attempting to establish rules or regulations, use of the document is permissible. DHSS's *MA Handbook* is a policy manual that is consistent with controlling leg-

---

[8] "Action" in this statute may be interpreted to mean an affirmative act, as suggested by Tannler. However, consistent with other areas of the law, "action" may also be interpreted to mean an inaction or a conscious failure to act. *See, e.g., Rockweit v. Senecal*, 187 Wis. 2d 189–90, 522 N.W.2d 575 (1994) (imposing liability for failure to extinguish hot embers in a fire pit); *State v. Williquette*, 125 Wis. 2d 86, 90, 370 N.W.2d 282 (Ct. App. 1985) (omission may constitute aiding and abetting in the abuse of a child). Both interpretations are reasonable because regardless of whether the party affirmatively or passively disclaims his or her share of property, the ultimate effect will be the same.

islation, both state and federal. Wis. Stat. § 49.45(34).[9] In fact, the portion of the *MA Handbook* that is relied on here is based on the federal model as it appears in the federal handbook.[10] This is evident when one examines the United States Department of Health and Human Services' (DHHS) *State Medicaid Manual*. Like the state's handbook, the federal manual also lists several "actions" that would cause income not to be received and may result in MA ineligibility. Many of these "actions" are technically an inaction or refusal to act. The following excerpt is taken directly from the federal manual:

> The following are examples of *actions* which could cause income or resources not to be received:
> - Irrevocably waiving pension income;
> - *Waiving the right to receive an inheritance*;
> - Not accepting or accessing injury settlements;
> - Tort settlements which are diverted by the defendant into a trust or similar device to be held for the benefit of an individual who is a plaintiff; and

---

[9] Wis. Stat. § 49.45(34) provides in part that "[t]he department shall prepare a medical assistance manual that is clear, comprehensive and consistent with this subchapter and 42 USC 1396a to 1396u. . . ."

[10] The attorney for DHSS made it clear at oral argument in this case that the state handbook is based on the federal manual. The following exchange demonstrates this:

*Justice Crooks:* What does the Department base that handbook on? Do they have a model from the federal government?

*Attorney Sumi:* There is a federal model. And perhaps this is a good time to inform the court that the federal manual does provide for this situation. It does say that waiver of an inheritance is an example of an action that could constitute divestment.

- Refusal to take legal action to obtain a court ordered payment that is not being paid, such as child support or alimony.

*State Medicaid Manual*, Section 3257(3) (emphasis added). Both the federal and state handbooks conclude that it is an "action" to refuse to take action to receive income to which one is entitled even if the refusal is merely a failure to act.

¶ 16.    This court is satisfied that DHSS's reliance on the *MA Handbook* in this situation is authorized by the statutes and that the *Handbook* is consistent with both state and federal legislation regarding medical assistance. As demonstrated, the handbook used by the state is actually based on the federal model provided by the United States DHHS manual. As such, we conclude that the use of the *MA Handbook* for guidance on the issue involved in this case is appropriate.

¶ 17.    Under Wisconsin law, a person is entitled by statute to a portion of his or her spouse's estate. *See* Wis. Stat. §§ 861.02, 861.03, 861.33. *See generally* Wis. Stat. Chs. 851 to 882. If the institutionalized person does not make a claim against his or her community spouse's estate, this failure to contest, or inaction, is a conscious act that constitutes divestment. *See* Wis. Stat. § 49.453; Wis. Admin. Code HSS § 103.065(4). *See also MA Handbook*, Section 14.2.1. Divestment results in MA ineligibility. Wis. Stat. § 49.453(2).

¶ 18.    Phyllis Tannler is an institutionalized person. Her husband died in 1994 leaving her nothing in his will. Nonetheless, pursuant to Wisconsin law, Tannler is entitled to a portion of her husband's estate. Through her guardian, Tannler could have contested the will of her husband or affirmatively elected or selected certain property to which she is entitled. Through her guardian, Tannler made no claims

against the estate. She accepted the will and chose to elect or select nothing. For purposes of determining MA eligibility, this "refusal to take action" is a conscious act that results in MA ineligibility. To conclude otherwise would be contrary to the purposes of the divestment provisions of the MA legislation.

¶ 19.  When interpreting a statute with an ambiguous term like "action" in this instance, this court looks to the purpose of the statute. Medical assistance is a joint federal and state program aimed at ensuring medical care for the poor and needy. *See* 42 U.S.C. § 1396, et seq. As the court of appeals in *Tannler* noted, the divestment portions of this legislation are designed to prevent those who, but for their divestment, are able to pay for their own medical needs. *Tannler*, 206 Wis. 2d at 392. DHSS's interpretation of the term "action" to include a "refusal to take action" to claim property to which one is entitled is consistent with the purposes of the divestment provisions of this legislation. If one renounces rights to his or her assets that may be used to pay for his or her own medical needs, then the taxpayers are unnecessarily made to bear the burden of supplying MA for that person. Consequently, this inaction is, in effect, no different from an affirmative action to disclaim. Both the state and federal manuals rely on this proposition in determining MA eligibility.

¶ 20.  The practical effect of Tannler's inaction is that persons other than the community spouse or the institutionalized spouse will receive the financial benefits of the conscious act to reject her share of the estate. The result will be that the taxpayers of this state will bear the burden of supporting Tannler while she resides in the nursing home and receives medical assistance. If Tannler had not rejected her share of her spouse's estate, then those assets would have been

available to provide for her maintenance and health care without burdening the taxpayers.

■

¶ 21.   Giving due weight to DHSS's final decision and order, we conclude that Tannler's failure to file a claim against her deceased husband's estate is an "action" within the meaning of Wis. Stat. § 49.453 and 42 USC § 1396p(e)(1). We uphold the decision of the Department finding Tannler ineligible for MA benefits because we hold that the failure of an institutionalized spouse to assert a claim against the estate of his or her deceased spouse constitutes a divestment for purposes of determining MA eligibility.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 22.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I join the majority opinion. I write to address the underlying policy of the statutes.

¶ 23.   Anyone who works with medical assistance statutes begins by appreciating that the federal and state statutes are extremely complex and may fairly be described as incomprehensible.[1] The statutes are characterized by ambivalence and ambiguity, by a confusing mix of means-tested programs and entitlements, and by uneasy compromises among different and often conflicting policies. This case illustrates the difficulties posed by the legislative compromises made in this difficult field.

¶ 24.   To be eligible for medical assistance an institutionalized person must have limited assets.

---

[1] *See* Jan Ellen Rein, *Misinformation and Self-Deception in Recent Long Term Care Policy Trends*, 12 J.L. & Pol. 195, 212 (1996).

Thus persons may have to spend down, that is, divest themselves of assets, to qualify for medical assistance. Certain divestments are acceptable; others are not.

¶ 25.  Although Congress requires divestment, it has recognized that elderly persons should not be forced into impoverishment in order to qualify an institutionalized spouse for medical assistance. Thus Congress has determined that spouses of those who need long-term care should not be driven by the government into poverty. The Medicare Catastrophic Coverage Act of 1988 addressed the issue of spousal impoverishment by protecting some resources of the non-institutionalized spouse (referred to as the community spouse) from the debts of the institutionalized spouse.[2]

¶ 26.  The case at bar involves the interplay of the divestment and spousal impoverishment provisions. Under the court's interpretation the community spouse retains the freedom to make testamentary gifts; yet at the community spouse's death the assets available by law to the institutionalized spouse are used for the care of that spouse. The court's interpretation of the statutes attempts to fit the congressional plan of enabling the community spouse to keep and dispose of his or her

___

[2] See Jeanette C. Schreiber, *Medicaid Financial Planning After the Medicare Catastrophic Coverage Act of 1988: Essential Changes Governing Eligibility and Transfer of Assets*, 63 Conn. B.J. 211 (1989). *See also* Harry R. Moody, The Return of the Repressed: The Ethics of Assets and Inheritance, *in* Institute for Health Services Research, U. Minn., *Who Owes Whom What? Personal, Family, and Public Responsibility for Paying Long-Term Care* 20 (1994) ("[W]hat Congress did in 1988 was to create a protection against spousal impoverishment, not a protection against" the impoverishment of testamentary beneficiaries.).

own assets while requiring an institutionalized person to use his or her assets for self care. Thus the holding of the court attempts to comport with the spousal impoverishment provisions as well as the divestment goals.

¶ 27.　I join the opinion of the court for the reasons stated.