900 A.2d 840

I.G., PETITIONER–APPELLANT, v. DEPARTMENT OF HUMAN
SERVICES, DIVISION OF MEDICAL ASSISTANCE AND
HEALTH SERVICES, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 2, 2006—Decided June 13, 2006.

Before Judges KESTIN, LEFELT and R.B. COLEMAN.

*John E. Nevins,* attorney for appellant.

*Zulima V. Farber,* Attorney General, attorney for respondent (*Michael J. Haas,* Assistant Attorney General, of counsel; *Elisabeth Doyle,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LEFELT, J.A.D.

Petitioner I.G., who suffers from Alzheimer's disease and resides in a nursing home, appeals from a final decision of the Director of the Division of Medical Assistance and Health Services (DMAHS) that rendered her ineligible for Medicaid benefits. DMAHS found I.G. ineligible because she did not, upon her husband's death, elect the marital share of his estate, which, by will, passed his entire residuary estate to a testamentary trust that afforded the trustee sole discretion to expend funds for I.G.'s needs. In her appeal, I.G. argues that waiver of the spousal elective share should not constitute a transfer of available resources rendering her ineligible for Medicaid. We disagree and affirm the DMAHS decision.

I.G. was born November 3, 1914, and was initially diagnosed with Alzheimer's disease in the late nineties. I.G. and her husband, E.G., continued to live together in their home until November 3, 2003, when I.G. moved to a nursing home. At some point before I.G. moved into the nursing home, title to the marital home was transferred to E.G. alone. On December 27, 2003, less than two months after I.G. had moved, E.G.'s health deteriorated, and he also moved into the same nursing home.

I.G. and E.G. both applied for Medicaid benefits toward the end of 2003 and were both deemed eligible as of January 1, 2004. However, the marital home had to be sold. After the home was sold for $128,162.21 on May 7, 2004, E.G. was deemed resource ineligible, as the value of his assets exceeded the $2,000 Medicaid limit. His benefits were terminated as of May 31, 2004.

About two months later, on July 26, 2004, E.G. died and his will was admitted to probate on August 6, 2004. J.K., the parties'

niece, who held I.G.'s power of attorney, was also E.G.'s executrix under the will. E.G.'s will left the entire residuary of his estate to I.G. "with the provision that said bequest shall be held In Trust [by J.K.] for [I.G.]." E.G.'s will named no subsequent beneficiary for any remainder of the trust upon I.G.'s death.

In an August 11, 2004 letter, the Ocean County Board of Social Services warned J.K. that waiving I.G.'s spousal elective share would "result in termination of Medicaid benefits." I.G.'s attorney, also acting as J.K.'s counsel, countered by advising the agency that E.G.'s estate "should have no effect" on I.G.'s Medicaid eligibility.

On January 25, 2005, the residuary of E.G.'s estate, $132,971.62, was deposited into a testamentary trust account at a New York bank. The will granted J.K. "sole discretion" over the trust to "pay over the principal and income, or any part thereof, for the needs of [I.G.] as [the trustee] shall determine." On February 15, 2005, Social Services notified I.G. that because her resources exceeded the Medicaid standard her benefits were terminated as of February 28, 2005.

I.G. requested a hearing, and the matter was transmitted to the Office of Administrative Law where an Administrative Law Judge conducted a hearing and issued an initial decision, finding that the agency had properly terminated I.G.'s benefits. The ALJ concluded that I.G. was resource ineligible because she did not elect against her husband's estate. The judge found that one-third of E.G.'s residuary estate, totaling $44,323.87, was countable "rendering [I.G.] resource ineligible for the Medicaid Only program."

The Director of DMAHS adopted the ALJ's conclusions in a final decision. The Director explained that "the issue here is the money used to fund the trust" and concluded that by "consenting to the will, [I.G.] used her 1/3 elective share to fund the trust," and the "refusal to elect against the estate is considered a transfer of assets she [was] entitled to receive under law." I.G., through J.K., appealed from this final decision.

■ Our review of an agency decision is "limited." *In re Taylor,* 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999). "Unless a [c]ourt finds that the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." *Brady v. Bd. of Review,* 152 *N.J.* 197, 210, 704 *A.*2d 547 (1997). "In reviewing agency action, the fundamental consideration is that a court may not substitute its judgment for the expertise of an agency 'so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable.'" *Williams v. Dep't of Human Servs.,* 116 *N.J.* 102, 107, 561 *A.*2d 244 (1989) (quoting *Dougherty v. Dep't of Human Servs.,* 91 *N.J.* 1, 12, 449 *A.*2d 1235 (1982)). Although "[a]ppellate courts must defer to an agency's expertise and superior knowledge of a particular field," this court need not give such deference to an agency's interpretation of law. *Greenwood v. State Police Training Ctr.,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992). Here, there are no facts in dispute, and we deal solely with a question of law: whether I.G. could have elected against E.G.'s estate and, if so, whether the failure to do so would constitute a disposal of assets for less than fair market value during the statutorily defined period of time, thereby requiring an ineligibility period for the Medicaid program.

■ Medicaid is a federal-state program "created to provide medical assistance to the poor at the expense of the public." *Mistrick v. Div. of Med. Assistance & Health Servs.,* 154 *N.J.* 158, 165, 712 *A.*2d 188 (1998) (citing *Atkins v. Rivera,* 477 *U.S.* 154, 156, 106 *S.Ct.* 2456, 2458, 91 *L.Ed.*2d 131, 137 (1986)). "The Federal Government shares the costs of medical assistance with states that elect to participate in the Medicaid program." *Estate of DeMartino v. Div. of Med. Assistance & Health Servs.,* 373 *N.J.Super.* 210, 217, 861 *A.*2d 138 (App.Div.2004), *certif. denied,* 182 *N.J.* 425, 866 *A.*2d 982 (2005). New Jersey participates in the Medicaid program through the enactment of the New Jersey Medical Assistance and Health Services Act, *N.J.S.A.* 30:4D–1 to – 19.1. In New Jersey, DMAHS, an agency within the Department

of Human Services, is responsible for administering the program, *N.J.S.A.* 30:4D–4, with the assistance of the county boards of social services.

The Commissioner of the Department of Human Services has adopted regulations governing participation in New Jersey's "Medicaid Only" program, including income and resource eligibility standards. *N.J.A.C.* 10:71–1.1 to –9.5. "[I]f the total value of an individual's resources exceeds $2,000," that individual is ineligible for the Medicaid program. *N.J.A.C.* 10:71–4.5(c); *see also N.J.A.C.* 10:71–4.8(a)(2); 42 *U.S.C.A.* § 1396r–5.

"In order to be considered in the determination of eligibility, a resource must be 'available' .... to an individual." *N.J.A.C.* 10:71–4.1(c). A resource is considered "available" when the individual has the "right, authority, or power to liquidate real or personal property, or his or her share of it" or where resources have been "deemed available to the applicant." *N.J.A.C.* 10:71–4.1(c)1 and 2.

In determining the effect of a transfer of assets, assets are defined to include "all income and resources of the individual and .... income and resources which the individual ... is entitled to but does not receive because of action or inaction by the individual ... or by any person ... with the legal authority to act in place of or on behalf of the individual[.]" *N.J.A.C.* 10:71–4.10(b)3. The regulations specifically identify the waiver of an inheritance, "including spousal elective share pursuant to *N.J.S.A.* 3B:8–10," as an example of an asset that if disposed of or transferred for less than fair market value in the requisite time period would render the individual ineligible for Medicaid. *N.J.A.C.* 10:71–4.10(a) and (b)3ii.

It is well accepted that DMAHS may not take any actions regarding Medicaid that are inconsistent with the federal law and regulations. *See, e.g., Estate of F.K. v. Div. of Med. Assistance and Health Servs.,* 374 *N.J.Super.* 126, 133, 863 *A.*2d 1065 (App. Div.), *certif. denied,* 184 *N.J.* 209, 876 *A.*2d 283 (2005). States

administering Medicaid may not apply a more restrictive methodology for evaluating eligibility than is provided in federal law. 42 *U.S.C.A.* § 1396a(r)(2)A.

In this instance, however, the federal law is similar to New Jersey's and defines assets as including "any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action ... (A) by the individual or such individual's spouse, (B) by a person ... with legal authority to act in place of or on behalf of the individual ... or (C) by any person ... acting at the direction or upon request of the individual[.]" 42 *U.S.C.A.* § 1396(h)(1); *see also,* Transmittal Number 64, *State Medicaid Manual* § 3257B.3 (explaining "the term 'assets an individual or spouse is entitled to' includes assets to which the individual is entitled or would be entitled if action had not been taken to avoid receiving the assets").

I.G. argues that DMAHS, by finding I.G. ineligible, has in effect interpreted our eligibility rules more restrictively than the federal regulations permit. According to I.G., the trust was an excludable asset and resources classified as excludable are not considered in determining Medicaid eligibility. *N.J.A.C.* 10:71–4.4(a). Specifically, I.G. asserts that trusts that are established by a spouse's will are excludable. *N.J.A.C.* 10:71–4.4(b)6i; *N.J.A.C.* 10:71–4.11(d); 42 *U.S.C.A.* 1396p(d)(2)A.

DMAHS argues in response that testamentary trusts are not excluded resources for the purpose of determining Medicaid eligibility, but are "dealt with using applicable cash assistance program policies." *State Medicaid Manual* § 3259.1A.1. I.G. concedes, however, that whatever remains in the trust after her death will be available to reimburse the State for Medicaid benefits expended on I.G.'s behalf. *N.J.S.A.* 30:4D–7.2; 42 *U.S.C.A.* 1396p(b)(1)(B); *see DeMartino, supra,* 373 *N.J.Super.* at 217–220, 861 *A.*2d 138.

In any event, we need not resolve this dispute because DMAHS has not argued that the entire trust is available to I.G. for

Medicaid purposes.[1] Regardless of the trust's status vis a vis Medicaid eligibility, the funds at issue here are not trust funds. What is at issue are the monies that were utilized to establish the trust, i.e., E.G.'s residuary estate comprised mostly of the monies received from the sale of the marital home, which was titled solely in E.G.'s name.

Because we focus on the time period preceding the transfer of the residuary estate to the trust, we also need not resolve I.G.'s contention that the transfer of E.G.'s remaining assets to the trust was excludable under *N.J.A.C.* 10:71–4.10(b)(8). That rule excludes from transfer penalties "a transfer of assets . . . for the sole benefit of a spouse . . . arranged in such a way that no individual except the spouse . . . can, in any way, benefit from the assets transferred either at the time of the transfer, or at any time in the future." *Ibid.* We need not resolve whether this transfer could not, in any way, benefit another person even after I.G.'s death.[2] Instead, we review only whether DMAHS correctly decided that J.K., on behalf of I.G., had the "right, authority, or power" to access one-third of E.G.'s residuary estate.

Under the terms of E.G.'s will, once the residuary was transferred to the trust, the funds became subject to the sole discretion of the trustee and hence unavailable to I.G. "[R]esources which are not accessible to an individual through no fault of his or her own . . . . include, but are not limited to, irrevocable trust funds." *N.J.A.C.* 10:71–4.4(b)6. Distributions for I.G.'s needs are to be made solely at the trustee's discretion. Thus, the trustee could decide, without any input from I.G., whether or not to distribute

---

[1] Note the following administrative decisions dealing with excludability of testamentary trusts. *E.O. v. Div. of Med. Assistance & Health Servs.*, 2001 N.J. AGEN LEXIS 1260 (N.J.Adm); *M.R. v. Div. of Med. Assistance & Health Servs.*, (2001) N.J. AGEN LEXIS 304 (N.J.Adm); *McKenna v. Div. of Med. Assistance & Health Servs.*, 97 *N.J.A.R.*2d (DMA) 42, 1997 *WL* 801418, 1997 N.J. AGEN LEXIS 261 (N.J. Adm.).

[2] The record does not contain I.G.'s will. Note also the laws of intestacy at *N.J.S.A.* 3B:5–1 to –14.

any portion of the trust funds for I.G.'s needs, medical or otherwise.

The elective share law, *N.J.S.A.* 3B:8–1 to –19, provides the surviving spouse with "a right of election to take an elective share of one-third of the augmented estate" of the deceased spouse. *N.J.S.A.* 3B:8–1. The " 'augmented estate' consists of the value of all property of both the deceased and surviving spouse as well as other property transferred to third parties without adequate consideration before the decedent's death." *In re Estate of Friedlein*, 230 *N.J.Super.* 100, 104, 552 *A.*2d 1018 (App.Div.1989). Judge Skillman, on behalf of this court, has explained that the spousal elective share "provides a kind of statutory safety net to assure that a surviving spouse receives at least the value of one-third of the property owned by the decedent and surviving spouse, augmented by the value of certain property transferred *inter vivos.*" *Id.* at 105, 552 *A.*2d 1018.

In granting J.K. her power of attorney, I.G. specifically authorized J.K. to "demand, sue for, collect, recover and receive all goods, claims, debts, monies, interests and demands whatsoever . . . that may hereafter be due or belong to me." Therefore, when J.K., on behalf of I.G., consented to the will and elected not to demand I.G.'s spousal share, I.G., in effect, waived immediate access to one-third of her husband's augmented estate, in this instance the residuary. The waiver, in practical effect, transferred one-third of the residuary to the trust without any compensation being returned to I.G. Such a transfer, under the pertinent regulations, warrants an ineligibility penalty. *See N.J.A.C.* 10:71–4.10(a) and (b)3ii.

I.G. argues that she had no need to elect against her husband's estate because the trust was for her sole benefit, and we must assume the trustee will act reasonably and responsibly. But I.G.'s need is not the test. The test is whether I.G. had the "right, authority, or power" over the funds, which would make them available to her. *N.J.A.C.* 10:71–4.1(c)1 and 2. Because I.G. *could have* elected to take a one-third spousal share of her husband's

estate, the share is available to her for Medicaid purposes, regardless of whether or not she actually needed the funds.

The pertinent regulations render persons ineligible for Medicaid who have "disposed of assets at less than fair market value at any time *during or after* [the so-called look back period], immediately before ... the date the individual becomes" institutionalized. *N.J.A.C.* 10:71–4.10(a) (emphasis added). "Penalties of ineligibility" are assessed for such transfers of assets that "take place *during or after* the look-back period."[3]   *N.J.A.C.* 10:71–4.10(b)(9)(iv) (emphasis added).

Furthermore, it is difficult for us to ignore the fact that funds well over the Medicaid resource limit are accessible for I.G.'s medical needs but may not be expended solely because the trustee believes that I.G.'s medical needs are being fully met by Medicaid. Consequently, E.G.'s decision to devise his estate to a discretionary trust, has the "practical effect" of forcing the taxpayers of New Jersey to "bear the burden of supporting [I.G.] while she resides in the nursing home and receives medical assistance. If [I.G.] had not rejected her share of her spouse's estate, then [at least] those assets would have been available to provide for her maintenance and health care without burdening the taxpayers." *Tannler v. DHSS,* 211 *Wis.*2d 179, 564 *N.W.*2d 735, 741 (1997).

Affirmed.

---

[3] I.G. also argues in this appeal that the testamentary trust was created and funded after the look-back period. This argument is without merit and seems to be premised on a mis-reading of *N.J.A.C.* 10:71–4.10(a) that defines assets to include those transferred "before or after" the look-back period.