No. 99–CV–1351

Ann BUETTNER, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF HEALTH & FAMILY SER-
VICES and Department of Workforce Development,
Defendants-Respondents.

No. 00–CV–305

Ann BUETTNER, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF HEALTH AND FAMILY SER-
VICES, Defendant-Respondent.

Court of Appeals

*No. 01–0981. Submitted on briefs March 14, 2002.—Decided
April 17, 2003.*

2003 WI App 90

(Also reported in 663 N.W.2d 282.)

701

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Carol J. Wessels* and *Donna Thompson-Schneider* of *SeniorLAW* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Robert M. Hunter*, assistant attorney general.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. ROGGENSACK, J.   Ann Buettner appeals a circuit court order affirming the determination of the Division of Hearings and Appeals (DHA) to terminate Ann's medical assistance due to the divestment of assets. Ann argues that her husband Richard's purchase of two "balloon annuities" did not constitute a prohibited divestment under WIS. STAT. § 49.453 (1997–98).[1] We conclude that § 49.453 required DHFS to examine whether Richard's cash transfer lacked economic substance by determining whether the asset transfer was made for less than fair market value. Because Richard's transfer of $200,000 was for less than its fair market value, DHA properly determined that the purchase of the annuities constituted a divestment of assets. Accordingly, we affirm DHA's decision to terminate Ann's medical assistance.

## BACKGROUND

¶ 2.   In March 1998, Richard Buettner purchased two "irrevocable annuities" for $100,000 each from Richard and Ann's adult children, Ronald Buettner and Kathleen Buettner. The "annuities" were nonassignable, unsecured financial instruments that required Ronald and Kathleen to each pay Richard fifty dollars per month for seventy-one months followed by a lump sum or "balloon" payment of $100,000 on March 1,

---

[1] All further references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

2004. The payment schedule was within the life expectancy of Richard. In April, Ann applied for medical assistance and DHFS, with knowledge of Richard's financial transactions, certified Ann as eligible for medical assistance effective April 1, 1998. Ann received payments for approximately one year.

¶ 3.  In April 1999, Ann received notice terminating her medical assistance benefits effective May 1, 1999. DHFS determined that Richard's purchase of the two "balloon annuities" constituted a divestment of assets under Wis. Stat. § 49.453 subjecting Ann to divestment penalties. DHFS's decision was based in part on an operations memo prepared by the Department of Workforce Development in 1999 (Ops Memo 99–19)[2] and two fair hearing decisions, MDV 30/35331 and MDV 30/35213, which considered "balloon annuities" similar to Richard's financial transactions and concluded that the annuities were prohibited divestments because (1) the annuitant did not receive fair market value for the assets transferred and (2) they did not require fixed periodic payments.[3] Ann requested a

---

[2] The Department of Workforce Development (DWD) prepared Ops Memo 99–19 pursuant to Wis. Stat. § 49.82(1) which directs DWD to "advise all county officers charged with the administration of requirements relating to public assistance programs . . . and render all possible assistance in securing compliance therewith, including the preparation of necessary blanks and reports."

[3] BWI Operations Memo 99–19 states in relevant part:

The determining factor in deciding whether a transfer of assets is a divestment is whether the applicant/recipient received fair market value for the transfer.

In an effort to assure uniformity in the application of current policy on the treatment of annuities and promissory notes, the Department is disseminating 2 recent fair hearing decisions: MDV

fair hearing to contest DHFS's determination and the DHA affirmed the decision to terminate Ann's benefits.

¶ 4. Ann filed a petition for judicial review of the DHA's decision in Milwaukee County Circuit Court and an action for declaratory judgment in Dane County Circuit Court that Ops Memo 99–19 was void as an improperly promulgated administrative rule under WIS. STAT. § 227.01(13). Additionally, Ann alleged that DHFS's "retroactive application" of Ops Memo 99–19 violated her right to due process under the Fourteenth Amendment.

¶ 5. The circuit court consolidated the two actions for purpose of review. In August 2000, the court granted summary judgment to DHFS declaring that Ops Memo 99–19 was not an administrative rule and therefore compliance with Wisconsin ch. 227 rulemaking procedures was not required. In a separate order, the circuit court affirmed DHA's determination that under WIS. STAT. § 49.453, Richard's purchase of the two "balloon annuities" constituted a divestment of assets. The court declined to address Ann's claim that DHFS's decision to terminate her benefits based on Ops Memo 99–19 violated her right to due process. Buettner appeals.

---

30/35331 and MDV 30/35213. These are decisions from the Department of Administration's Division of Hearings and Appeals that provide guidance to local agency staff to determine when a promissory note or annuity is divestment.

In a section entitled "REVIEWS" the memo provides:

As mentioned under "Effective Date," the policy described in this memo has existed since 10/01/93. If you are conducting a review for a case where the policy was not applied as described in this memo, apply the policy now. If, in applying the policy, you determine the recipient is no longer MA eligible, (1) provide regular timely notice of discontinuance and (2) do *not* pursue recoupment.

## DISCUSSION

**Standard of Review.**

¶ 6. The construction of WIS. STAT. § 49.453 and its application to undisputed facts is a question of law that we review *de novo. See Tannler v. DHSS*, 211 Wis. 2d 179, 183, 564 N.W.2d 735, 738 (1997). However, we generally accord an administrative agency's statutory interpretation one of three levels of deference: great weight, due weight or no deference. *Id.* at 184, 564 N.W.2d at 738; *Artac v. DHFS*, 2000 WI App 88, ¶ 9, 234 Wis. 2d 480, 610 N.W.2d 115. Great weight deference is warranted where:

> 1) the agency was charged by the legislature with the duty of administering the statute; 2) the interpretation of the agency is one of long-standing; 3) the agency employed its specialized knowledge or expertise in forming the interpretation; and 4) the agency's interpretation will provide consistency and uniformity in the application of the statute.

*Tannler*, 211 Wis. 2d at 184, 564 N.W.2d at 738. Due weight deference is appropriate "if the agency decision is very nearly one of first impression." *Id.* (citation omitted). Finally, we review the agency's decision *de novo* "if the case is one of first impression for the agency and the agency lacks any special expertise." *Id.*

¶ 7. Ann contends that the proper standard of review is *de novo* because the final decision to terminate her medical assistance benefits was made by DHA, rather than DHFS. Ann relies on *Roehl Transport Inc. v. DHA*, 213 Wis. 2d 452, 570 N.W.2d 864 (Ct. App. 1997), and its progeny for the proposition that we grant

no deference to a decision by DHA because DHA is not "a line agency charged with the administration and enforcement of the statutes involved." *Roehl*, 213 Wis. 2d at 460, 570 N.W.2d at 868. In *Artac*, we followed *Roehl* and reviewed *de novo* a decision by DHA to deny medical assistance benefits because DHA was not a "line agency" and "[did] not have experience administering the [medical assistance] program." *Artac*, 2000 WI App 88 at ¶ 13. Buettner asserts that under *Artac*, the appropriate level of deference in this case is *de novo*.

¶ 8. DHFS, in contrast, argues that "at least due weight" deference must be accorded DHA's decision to terminate Ann's medical assistance because the decision was based on DHFS's long-standing interpretation of WIS. STAT. § 49.453 as detailed in Ops Memo 99–19 and the attached decisions MDV-30/35213 and MDV-30/35331. Stated differently, DHFS contends that *Artac* does not apply because we are in effect reviewing DHFS's interpretation of § 49.453. DHFS relates this case to *Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 588 N.W.2d 667 (Ct. App. 1998). In *Sea View*, we granted great weight deference to a decision by the DHA to issue Sea View a pier permit. We concluded that because the Department of Natural Resources (DNR) expressly adopted the hearing examiner's decision as its own pursuant to WIS. STAT. § 227.46(3)(a), great weight deference was warranted because the DNR had expertise in regulating piers and had been charged by the legislature with the duty to enforce the laws regulating piers in navigable waters. *Sea View*, 223 Wis. 2d at 149, 588 N.W.2d at 672. Thus, we distinguished *Roehl* on the basis that the DNR adopted the hearing examiner's decision as its own. That is not the case here. As the circuit court noted, DHFS did not adopt DHA's decision to terminate Ann's

medical assistance benefits; this remains an administrative review of a DHA decision interpreting the "extremely complex" medical assistance statutes. *See Tannler*, 211 Wis. 2d at 191, 564 N.W.2d at 741 (Abrahamson, C.J., concurring). Accordingly, we apply *Artac* and conclude that the proper standard of review is *de novo*.

¶ 9.    The parties agree that whether Ops Memo 99–19 is void as an improperly promulgated administrative rule is a question of law that we review *de novo. See Schoolway Transp. Co. v. DOT*, 72 Wis. 2d 223, 232, 240 N.W.2d 403, 408 (1976).

### WISCONSIN STAT. § 49.453.

¶ 10.   Medical assistance is a joint federal and state program aimed at ensuring medical care for those who cannot pay for their own care. *Tannler*, 211 Wis. 2d at 190, 564 N.W.2d at 741. Accordingly, to be eligible for medical assistance in Wisconsin, certain financial requirements must be met. *See* WIS. STAT. ch. 49. Because individuals are generally not eligible unless they have limited assets, those seeking medical assistance may need to spend down assets before they can qualify. *Tannler*, 211 Wis. 2d at 191–92, 564 N.W.2d at 741 (Abrahamson, C.J., concurring). However, under WIS. STAT. § 49.453, individuals become ineligible for certain medical assistance benefits if they transfer assets in a manner prohibited by the statute. The purpose of prohibiting certain types of asset transfers is to prevent those who could afford to pay for their own medical needs from receiving medical assistance. *Id.* at 190, 564 N.W.2d at 741.

¶ 11.   The relevant Wisconsin statutory provisions pertaining to Richard's asset transfer are WIS. STAT.

§ 49.453(2)(a) and (4). Section 49.453(2)(a), the general divestment provision, provides:

> **(2)** INELIGIBILITY FOR MEDICAL ASSISTANCE FOR CERTAIN SERVICES. (a) *Institutionalized individuals.* Except as provided in sub. (8), if an institutionalized individual or his or her spouse, or another person acting on behalf of the institutionalized individual or his or her spouse, *transfers assets for less than fair market value* on or after the institutionalized individual's look-back date, the institutionalized individual is ineligible for medical assistance for the following services for the period specified under sub. (3):
>
> 1. For nursing facility services.
>
> 2. For a level of care in a medical institution equivalent to that of a nursing facility.

(Emphasis added). Section 49.453(4)(a) addresses divestment of assets to irrevocable annuities and provides:

> **(4)** IRREVOCABLE ANNUITIES. (a) For the purposes of sub. (2), whenever a covered individual or his or her spouse, or another person acting on behalf of the covered individual or his or her spouse, transfers assets to an irrevocable annuity in an amount that exceeds the expected value of the benefit, the covered individual or his or her spouse transfers assets for less than fair market value.

¶ 12. Ann argues that Richard's purchase of the "balloon annuities" was not a divestment of assets under WIS. STAT. § 49.453 because the financial instruments comply with § 49.453(4)(a), which she contends determines whether divestment has occurred when the transfer of assets is to an annuity. Stated differently, Ann asserts that because Richard purchased an irrevocable annuity, the "fair market value" requirement of

711

subsec. (2)(a) is inapplicable. Under subsec. (4)(a), the divestment penalty applies if the amount transferred exceeds the "expected value of the benefit." Section 49.453(1)(c) defines "expected value of the benefit" as "the amount that an irrevocable annuity will pay to the annuitant during his or her expected lifetime." Accordingly, Ann asserts that a prohibited divestment has not occurred because the asset transfer did not exceed the expected value of the benefit; the expected return on the two annuities is $207,100, which amounts to $7100 more than the value transferred. Therefore, Ann contends that DHA erred in its determination that Richard's purchase of the two annuities constituted a prohibited divestment of assets. We disagree.

¶ 13.    The purpose of all statutory construction is to discern the intent of the legislature. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506, 509 (1997). We give the language of an unambiguous statute its ordinary meaning. *Id.* Applying this test to Wis. Stat. § 49.453, we conclude that the underlying determination of whether an asset transfer results in medical assistance ineligibility is whether the individual or someone acting on his or her behalf transferred assets for less than the fair market value of the income or asset. *See* § 49.453(2). Subsection (4) merely provides *one* way in which the transfer of assets to an annuity may render an individual ineligible for medical assistance. As DHFS points out, subsec. (4) does not state that a transfer has been made for fair market value under subsec. (2)(a) so long as the asset transfer does not exceed the value of the benefit. Rather, it simply provides an additional requirement that is applicable only to irrevocable annuities. Thus, § 49.453 required DHFS to examine whether Richard's cash transfer

712

lacked economic substance by determining whether the asset transfer was made for less than fair market value of the asset per subsec. (2)(a).

¶ 14. Ann does not address Wis. Stat. § 49.453(2)(a), but chooses instead to buttress her argument with the "cardinal rule" of statutory construction that when two statutes apply to the same subject, the more specific statutory provision controls the matter. She concludes, therefore, that because the financial instruments are annuities that comply with specific provisions of subsec. (4), she remains eligible for medical assistance. We agree with Ann's recitation of this well-settled rule of statutory construction. However, it is also well-settled that the rule applies only when there is a *conflict* between the two statutory provisions. *Jones v. State*, 226 Wis. 2d 565, 576, 594 N.W.2d 738, 743 (1999). The rule also states that "conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed." *Id.* (citation omitted). Ann does not argue that subsecs. (2)(a) and (4) conflict, she asserts only that subsec. (2)(a) does not apply. We do not agree. There is nothing in the plain language of § 49.453 to suggest that provisions (2)(a) and (4) are mutually exclusive or that the purchase of an irrevocable annuity constitutes a divestment only if the annuitant receives an amount less than her initial investment. Section 49.453 requires courts to look to the substance of an "annuity" transaction rather than its form; subsec. (4) provides *one* way to do this. Thus, we construe § 49.453 to require irrevocable annuity transactions, made on or after an individual's look-back

date, to satisfy both subsec. (2)(a) and (4) in order for the institutionalized person to secure or retain medical assistance eligibility.

¶ 15. Ann additionally challenges this construction by pointing to subsequent legislation that amended WIS. STAT. § 49.453(4) so that fixed rate irrevocable annuities are now required to have equal periodic payments. *See* 1999 Wis. Act 9, § 1430–33. She argues that if under the previous version of the statute, the purchase of an irrevocable "balloon annuity" constituted a divestment, the legislature would not have needed to amend the statute. We do not find this argument persuasive.

¶ 16. WISCONSIN STAT. § 49.453(4)(a) (2001–02), as amended, provides:

(4) IRREVOCABLE ANNUITIES, PROMISSORY NOTES AND SIMILAR TRANSFERS. (a) For the purposes of sub. (2), whenever a covered individual or his or her spouse, or another person acting on behalf of the covered individual or his or her spouse, transfers assets to an irrevocable annuity, or transfers assets by promissory note or similar instrument, in an amount that exceeds the expected value of the benefit, the covered individual or his or her spouse transfers assets for less than fair market value. A transfer to an annuity, or a transfer by promissory note or similar instrument, is not in excess of the expected value only if all of the following are true:

1. The periodic payments back to the transferor include principal and interest that, at the time that the transfer is made, is at least at one of the following:

a. For an annuity, promissory note or similar instrument that is not specified under subd. 1. b. or par.

714

(am), the applicable federal rate required under section 1274(d) of the Internal Revenue Code, as defined in s. 71.01(6).

b. For an annuity with a guaranteed life payment, the appropriate average of the applicable federal rates based on the expected length of the annuity minus 1.5%.

2. The terms of the instrument provide for a payment schedule that includes equal periodic payments, except that payments may be unequal if the interest payments are tied to an interest rate and the inequality is caused exclusively by fluctuations in that rate.

We agree that there exists an inference that the legislature intends to create a new right or withdraw an existing right when it amends a statute. *Lang v. Lang*, 161 Wis. 2d 210, 220, 467 N.W.2d 772, 776 (1991). Additionally, we agree with Ann that 1999 Wis. Act 9, § 1430–33 explains the requirements of § 49.453(4) to include, for example, an express requirement that an annuity provide for: (1) equal payments, (2) periodic payments that include both principal and interest and (3) interest that accrues at a particular rate. We do not agree, however, that the legislature's decision to state these requirements in the statute suggests that, prior to the amendment, transfers with no legitimate underlying economic substance were permitted by the statute. We note that the text of the amendment suggests that it was intended to clarify the meaning of "exceeds the expected value of the benefit" rather than substantively altering the requirements of § 49.453. *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) ("To propose a change in a law's *text* is not necessarily to propose a change in the law's *effect*. New words may be

715

designed to fortify the current rule with a more precise text that curtails uncertainty."). Although the statute now has specific requirements with which an annuity must comply under § 49.453, the initial question under § 49.453 remains whether the transfer of assets to the annuity was made for less than fair market value. *See* WIS. STAT. § 49.453(2)(a).

¶ 17. Additionally, our construction is consistent with legislative intent. The purpose of medical assistance is to ensure medical care for those unable to pay for the care they need. *Tannler*, 211 Wis. 2d at 190, 564 N.W.2d at 741. The divestment provisions and the income and asset eligibility rules are intended to ensure that *only* those persons receive assistance. Subsection (4) allows the elderly to retain this choice so long as the amount transferred does not "exceed the expected value of the benefit." However, to allow medical assistance eligibility by the divesting of assets to family members for no economic advantage would contradict the basic purpose of the statute. *See State v. Clausen*, 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982) ("[A] statute should be construed to give effect to its leading idea, and the entire statute should be brought into harmony with the statute's purpose."). Accordingly, the annuity must also meet the "fair market value" requirement of subsec. (2)(a).

**Fair Market Value.**

¶ 18. WISCONSIN STAT. ch. 47 does not define "fair market value." However, the *Medical Assistance Handbook* drafted by DHFS to assist county economic support workers who administer the medical assistance program defines "fair market value" as "an estimate of the value of the asset, if sold at the prevailing [market] price at the time it was actually transferred." In addi-

tion, prior case law has defined "fair market value" or "full value of property" as: "the amount it will sell for upon arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy." *City of West Bend v. Continental IV Fund Ltd. P'ship*, 193 Wis. 2d 481, 486, 535 N.W.2d 24, 26 (Ct. App. 1995) (citation omitted).

¶ 19. Accordingly, DHA found that Richard's $200,000 cash transfer for the two annuities was made for less than fair market value. The examiner noted that the annuities were nonassignable and unsecured, and were private financial instruments that paid a rate of return of less than one percent, with exceptionally low monthly income payments of fifty dollars per annuity. Additionally, it noted that the financial transaction transpired between the Buettners and their two children and was clearly not an "arms-length transaction." We agree with DHA that "[no] person of sound mind would give [$200,000] to an unrelated third party in exchange for the unsecured, low yield, and non-alienable promises in the instant document." Therefore, we conclude that DHA properly determined that Richard's purchase of the two annuities constituted a prohibited divestment of assets.

¶ 20. Ann challenges DHA's finding by asserting that the burden to prove that the asset transfer was made for less than fair market value rests with the county and because the "economic support specialist . . . could not provide any evidence as to the fair market value of the transactions," there is insufficient factual basis to determine that the asset transfer was made for less than fair market value. In addition, Ann argues

that DHFS is obligated to set limits or criteria for valuing her financial instrument and in the absence of such criteria, DHFS is barred from proving that the annuity has less fair market value than the cash used to acquire it. We disagree. It is true that DHFS must prove that the transfers were made for less than fair market value. *See* WIS. STAT. § 227.57(6). However, DHFS has satisfied this burden. Under these circumstances, an unsecured total transfer of $200,000 to a related party in exchange for payments of fifty dollars per month per annuity, is a transfer for less than fair market value. In addition, DHFS is under no obligation to develop criteria for each of the thousands of different financial instruments that may be devised. Ann provides no evidence, legal authority or persuasive argument to rebut this conclusion.

¶ 21.   Ann also challenges DHA's finding by again pointing to the 1999 amendment to WIS. STAT. § 49.453 as "proof" that prior to the amendment, a cash transfer to an annuity constituted a divestment only if the amount transferred "exceeds the expected value of the benefit." *See* § 49.453(4). We again disagree. For purposes of determining whether the transfer constituted a prohibited divestment, it is immaterial whether the amendment was a clarification or substantive change. Section 49.453, with or without the amendment, requires Ann to show that she received fair market value for the $200,000 cash transfer. Because she failed to do this, § 49.453(2)(a) renders her ineligible to receive medical assistance for institutionalized care.[4]

---

[4] As an alternative ground for its decision to terminate Ann's medical assistance benefits, the DHA examiner concluded that WIS. STAT. § 49.453(4) was not applicable because the financial instruments at issue were not "annuities" as contem-

¶ 22.   DHFS's decision to terminate Ann's medical assistance benefits was based in part on Ops Memo 99–19 and the attached fair hearing decisions, MDV 30/35331 and MDV 30/35213, which construed WIS. STAT. § 49.453 to prohibit financial instruments with inadequate interest rates and "balloon" payments. Because the 1999 amendment to § 49.453 expressly added "equal payment" and interest rate requirements, Ann argues that Ops Memo 99–19 constituted an administrative rule, which was not properly promulgated under WIS. STAT. § 227.10 and should therefore be declared invalid. Ann also argues that DHFS "retroactively" applied the new requirements of Ops Memo 99–19 to Richard's transaction, which resulted in the termination of her benefits, violating her right to "fair warning" under the Due Process Clause of the Fourteenth Amendment.

¶ 23.   We have already concluded that WIS. STAT. § 49.453 prohibited Ann's transfer. This prohibition results from application of the plain language of the statute, rather than any interpretation or statement of policy contained within Ops Memo 99–19. Accordingly, because § 49.453(2) prohibits the transaction, with or without Ops Memo 99–19, we need not decide whether DHFS improperly relied on the memo.

plated by the statute. The circuit court likewise engaged in a thoughtful analysis regarding the character of the instruments and concluded that because the payments were not equal, the instruments were not annuities. However, because we conclude that subsec. (2)(a) is applicable in the context of "irrevocable annuities," and because Richard's transfer was not made at fair market value, we need not decide whether the financial instrument were in fact annuities.

719

¶ 24. With regard to Ann's due process argument, Ann cites *Elections Board v. WMC*, 227 Wis. 2d 650, 597 N.W.2d 721 (1999), for the proposition that "a deprivation of the due process right of fair warning can occur . . . from unforeseeable and retroactive interpretation of that statutory language." *Id.* at 679–80, 597 N.W.2d at 735. While this may be true, Ann ignores a critical difference between *Elections Board* and the facts here. In *Elections Board*, the Election Board for the State of Wisconsin attempted to apply a *new,* context-based standard to several advertisements after their broadcast. The court held that "it would be profoundly unfair to apply a previously unarticulated test, *retroactively,* to these defendants." *Id.* at 679, 597 N.W.2d at 735 (emphasis added). In contrast, DHFS reviewed Ann's case, determined that the purchase of the annuities constituted a prohibited divestment under Wis. Stat. § 49.453 and terminated Ann's *future* medical assistance benefits. Unlike *Elections Board,* DHFS's decision was not based on a "previously unarticulated test." The fair market value requirement of subsec. (2)(a) prohibited transactions with no economic substance both when DHFS certified Ann for medical assistance and when she received notice terminating her benefits. Additionally, we note that DHFS's decision had only prospective application; DHFS did not attempt to recoup monies already paid for Ann's care. Accordingly, we conclude that DHFS's decision to terminate Ann's future medical assistance did not violate the Due Process Clause.

## CONCLUSION

¶ 25. We conclude that Wis. Stat. § 49.453 required DHFS to examine whether Richard's cash trans-

fer lacked economic substance by determining whether the asset transfer was made for less than fair market value. Because Richard's transfer of $200,000 was for less than its fair market value, DHA properly determined that the purchase of the annuities constituted a divestment of assets. Accordingly, we affirm DHA's decision to terminate Ann's medical assistance.

*By the Court.*—Order affirmed.