COUNTY OF DANE, Plaintiff-Appellant-Petitioner,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and
Gloria N. Graham, Defendants-Respondents.

Supreme Court

*No. 2006AP2695. Oral argument September 10, 2008.
—Decided January 23, 2009.*

2009 WI 9

(Also reported in 759 N.W.2d 571.)

For the plaintiff-appellant-petitioner there were briefs by *Timothy J. Yanacheck* and *Bell, Gierhart & Moore, S.C.*, Madison, and oral argument by *Timothy J. Yanacheck.*

For the defendant-respondent Labor and Industry Review Commission, there was a brief and oral argument by *David A. Hart, III,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

For the defendant-respondent Gloria N. Graham, there was a brief by *Raymond G. Clausen* and *Clausen & Severson,* Madison, and oral argument by *Raymond G. Clausen.*

An amicus curiae brief was filed by *Steven D. Hintzeman, Debra A. DeLeers,* and *Stellpflug Law, S.C.,* De Pere, on behalf of the Wisconsin Association for Justice.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] affirming the circuit court's decision,[2] which affirmed the Labor and Industry Review Commission's (LIRC) order directing that Gloria Graham (Graham) is eligible to receive a statutory award for permanent disfigurement under Wisconsin worker's compensation law, Wis. Stat. § 102.56(1) (2005–06)[3] even though she suffered no visible burns, scars or amputations. In affirming LIRC's

---

[1] *County of Dane v. LIRC,* 2007 WI App 262, 306 Wis. 2d 830, 744 N.W.2d 613.

[2] The Honorable Maryann Sumi of Dane County presided.

[3] All further references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

interpretation of § 102.56(1) and the corresponding award of compensation to Graham, the circuit court held that LIRC was entitled to great weight deference, while the court of appeals held that due weight deference was appropriate.

¶ 2. The dispositive issue in this case is whether the result of Graham's workplace injury is compensable under Wis. Stat. § 102.56(1). We conclude that LIRC's interpretation of § 102.56(1) is entitled to no deference due to its inconsistent past interpretations that provide no real guidance, but we nevertheless affirm LIRC's order directing that Graham is eligible to receive an award under § 102.56(1) based on the statute's plain meaning as applied to the result of Graham's workplace injury. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 3.. The following undisputed facts are based on the findings of the administrative law judge (ALJ) that LIRC adopted, unless otherwise noted. Graham began working for Dane County as a food service worker at the Dane County Consolidated Food Services Kitchen at Badger Prairie on April 23, 2001. She previously had been employed as a cook, a hotel maid, a paper delivery person, a textile worker and a companion for elderly and disabled persons. On July 9, 2001, Graham slipped and fell on a wet floor while working at the County's kitchen, and her leg was twisted behind her back resulting in a significant knee injury.

¶ 4. On September 25, 2001, Graham underwent arthroscopic surgery and other medical procedures to her knee. Her post-operative recovery did not go well, and she was left with persistent pain and significant

302

strength loss in her knee. In addition, she suffered a loss of balance and can no longer walk without a cane. Graham now walks with a severely pronounced, foot-dragging limp. She is currently unemployed and is actively seeking employment without success.

¶ 5. Dane County agreed to pay Graham temporary disability, medical expenses and 25 percent permanent partial disability for loss of function at the knee. Graham also sought to recover additional compensation, claiming she had sustained a permanent disfigurement under Wis. Stat. § 102.56(1). Section 102.56(1) provides in relevant part:

> If an employee is so permanently disfigured as to occasion potential wage loss, the department may allow such sum as it deems just as compensation therefor . . . . In determining the potential for wage loss and the sum awarded, the department shall take into account the age, education, training and previous experience and earnings of the employee, the employee's present occupation and earnings and likelihood of future suitable occupational change. Consideration for disfigurement allowance is confined to those areas of the body that are exposed in the normal course of employment. The department shall also take into account the appearance of the disfigurement, its location, and the likelihood of its exposure in occupations for which the employee is suited.

¶ 6. Dane County argued that historically, only those injuries resulting in visible amputations, scarring or burns constituted disfigurements under Wis. Stat. § 102.56(1), based on LIRC's decision in *Spence v. POJA Heating & Sheet Metal Co.,* Claim No. 88–018562 (LIRC Jan. 20, 1994). In *Spence,* LIRC held that Spence's limp was not a disfigurement under § 102.56(1) because scarring and swelling were visible only when he re-

303

moved his shoe and sock, and that Wis. Stat. § 102.52(12), under which Spence had already recovered for his limb's loss of functionality, was the sole avenue of recovery. Based on *Spence,* Dane County argued that since Graham did not have visible scarring when fully clothed, her limp was not compensable as a disfigurement under § 102.56(1).

¶ 7. In response, Graham looked to an earlier LIRC decision, *Jorgensen v. Wisconsin Department of Veterans Affairs,* Claim No. 84–27383 (LIRC Oct. 10, 1986), for support. In *Jorgensen,* LIRC held that Jorgensen was disfigured under Wis. Stat. § 102.56(1) because she had three separate scars on her ankle, had to wear a brace and walked with a limp. Since this would affect Jorgensen's future employability, LIRC awarded $10,000 in disfigurement compensation. Graham argued that LIRC's interpretation of the statute in *Jorgensen* mandated the conclusion that her limp be considered a disfigurement.[4]

¶ 8. After considering these arguments, the ALJ made findings that LIRC adopted. The ALJ found that Graham's "walk was a mixture of a limp and a foot drag, her legs looked imperfect and asymmetrical, and watching her [walk] with such difficulty was painful." In addition, the ALJ found that "[t]he look of her legs and her altered gait will negatively affect her potential employability and the wage she will earn." Based on these findings, LIRC concluded that Graham's injury was compensable under Wis. Stat. § 102.56(1), and she was awarded $15,000.

---

[4] Graham argued that, as in *Jorgensen,* her foot-dragging limp was a physical manifestation in addition to the limping motion.

304

¶ 9. LIRC also expressly reversed its decision in *Spence,* reaffirmed its conclusions in *Jorgensen* and rejected the argument that disfigurement awards are limited to visible burns, scars and amputations.[5] LIRC explained that in tracking the language of Wis. Stat. § 102.56(1), the focus of the inquiry should be on whether the disfigurement occurs on those areas of the body that are exposed in the normal course of employment and whether the injury occasions potential wage loss.

¶ 10. The circuit court, in reviewing LIRC's decision, determined that the commission's interpretation of Wis. Stat. § 102.56(1) was entitled to great weight deference, even though all of the criteria[6] necessary for such deference were not present. Applying this standard of review, the circuit court affirmed LIRC's order, holding that LIRC's interpretation advanced the statute's purpose, was not unreasonable, and was not contrary to the plain language of § 102.56(1). The court further supported its conclusion by noting that nothing in § 102.56(1) limits disfigurement awards to those situations involving only visible burns, scars or amputations.

¶ 11. The court of appeals, in affirming LIRC's and the circuit court's decisions, differed from the circuit court in its analysis of the level of deference due LIRC's interpretation of Wis. Stat. § 102.56(1). *County of Dane v. LIRC,* 2007 WI App 262, ¶ 18, 306 Wis. 2d 830, 744 N.W.2d 613. Because LIRC's interpretation

---

[5] One commissioner dissented, and would have reversed the ALJ's order based on LIRC's decision in *Spence v. POJA Heating & Sheet Metal Co.,* Claim No. 88–018562 (LIRC Jan. 20, 1994).

[6] One missing criterion was that the agency interpretation be "one of long standing," which the circuit court acknowledged was not present here.

was not one of long standing, which is a prerequisite for great weight deference, LIRC was not entitled to great weight deference. *Id.*, ¶ 12. However, the court of appeals determined that LIRC's interpretation was entitled to due weight deference, because LIRC is the agency charged with enforcement of the worker's compensation statute, its change in position in classifying a limp as a statutory disfigurement under § 102.56(1) was clearly explained, and it acknowledged its prior decisions in *Jorgensen* and *Spence. Id.*, ¶¶ 15, 17–18.

¶ 12. Applying due weight deference, the court of appeals held that LIRC's interpretation was reasonable under the plain language of Wis. Stat. § 102.56(1) and was consistent with the statutory purpose. *Id.*, ¶¶ 20–24. In considering whether Dane County's interpretation, which relied on *Spence,* was more reasonable, the court of appeals held that it was not, noting that there was no basis for *Spence*'s declaration that disfigurement historically has been limited to visible burns, scars or amputations. *Id.*, ¶ 26. Since LIRC's interpretation was reasonable, and the County's interpretation was not more reasonable, LIRC's interpretation was upheld, and the court of appeals affirmed the grant of disfigurement compensation to Graham under § 102.56(1). *Id.*, ¶ 27.

¶ 13. We granted review and now affirm.

## II. DISCUSSION

### A. Standard of Review

¶ 14. In reviewing this worker's compensation claim, we review LIRC's decision, not the decisions of the court of appeals or the circuit court. *Liberty Truck-*

306

*ing Co. v. DILHR,* 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973). Here, LIRC interpreted Wis. Stat. § 102.56(1). The construction of a statute and its application to undisputed facts are questions of law that we generally review independently. *Watton v. Hegerty,* 2008 WI 74, ¶ 6, 311 Wis. 2d 52, 751 N.W.2d 369 (citing *Marder v. Bd. of Regents of the Univ. of Wis. Sys.,* 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110). However, depending on the circumstances, an agency's interpretation of a statute is entitled to one of the following three levels of deference: great weight deference, due weight deference or no deference. *Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis.,* 2005 WI 93, ¶ 37, 282 Wis. 2d 250, 700 N.W.2d 768 (citing *Hutson v. Wis. Pers. Comm'n,* 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212); *Tannler v. DHSS,* 211 Wis. 2d 179, 184, 564 N.W.2d 735 (1997).

¶ 15. One rationale for according LIRC's statutory interpretation deference comes from Wis. Stat. § 227.57(10), which states that in reviewing an agency's decision, "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." *See Racine Harley-Davidson, Inc. v. Div. of Hearings & Appeals,* 2006 WI 86, ¶ 13, 292 Wis. 2d 549, 717 N.W.2d 184. Our past decisions often have discussed these three levels of deference: great weight deference, due weight deference and de novo review, which is also known as no deference, when examining an agency's interpretation and application of a statute. *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996); *Buettner v. DHFS,* 264 Wis. 2d 700, 708, 663 N.W.2d 282 (Ct. App. 2003) (citing *Tannler,* 211 Wis. 2d at 184).

¶ 16. Great weight deference is given to an agency's interpretation of a statute if the following four requirements are met:

(1) the agency was charged by the legislature with the duty of administering the statute; (2)[] the interpretation of the statute is one of long-standing; (3)[] the agency employed its expertise or specialized knowledge in forming the interpretation; and (4)[] the agency's interpretation will provide uniformity and consistency in the application of the statute.

*Clean Wis.*, 282 Wis. 2d 250, ¶ 39 (quoting *Hutson*, 263 Wis. 2d 612, ¶ 32). Under great weight deference, the agency's interpretation will be upheld if it is reasonable, even if there are other, more reasonable interpretations. *Id.*, ¶ 41.

¶ 17. An agency's interpretation of a statute is entitled to due weight deference when "the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.*, ¶ 42 (quoting *Hutson*, 263 Wis. 2d 612, ¶ 33). This intermediate standard of review is also based on the recognition that the legislature has entrusted the agency with the duty to apply the statute under consideration. *Id.* Under due weight deference, we will uphold the agency's reasonable interpretation of a statute as long as another interpretation is not more reasonable. *Id.*

¶ 18. Finally, we will give no deference to an agency's interpretation of a statute when "the issue before the agency is clearly one of first impression . . .

or when an agency's position on an issue has been so inconsistent as to provide no real guidance." *UFE,* 201 Wis. 2d at 285. As we noted above, this "level of deference" is often referred to as an independent or de novo review of the agency's interpretation of the statute. *Clean Wis.,* 282 Wis. 2d 250, ¶ 43.

¶ 19. We note here that there is little difference between due weight deference and no deference, since both situations require "us to construe the statute ourselves. In so doing, we employ judicial expertise in statutory construction, and we embrace a major responsibility of the judicial branch of government, deciding what statutes mean." *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 105 (Roggensack, J., concurring).[7]

¶ 20. Application of the above principles leads us to conclude that LIRC is entitled to no deference in this case. LIRC's decisions in *Spence, Jorgensen* and this case apply Wis. Stat. § 102.56(1) inconsistently to very similar factual situations. Accordingly, by concluding that a limp is, and then is not, a disfigurement under § 102.56(1), LIRC demonstrates that even though this issue is not one of first impression, its decisions provide no real guidance. As a result, we give no deference to LIRC's interpretation. *Clean Wis.,* 282 Wis. 2d 250, ¶ 43; *Marten Transp., Ltd. v. DILHR,* 176 Wis. 2d 1012, 1019, 501 N.W.2d 391 (1993); *UFE,* 201 Wis. 2d at 285.

---

[7] *See also Racine Harley-Davidson, Inc. v. Div. of Hearings & Appeals,* 2006 WI 86, ¶ 20, 292 Wis. 2d 549, 717 N.W.2d 184 ("Under both due weight deference and no deference, the reviewing court may adopt, without regard for the agency's interpretation, what it views as the most reasonable interpretation of the statute.").

## B. Interpretation of Wis. Stat. § 102.56(1)

### 1. General principles

¶ 21. Statutory interpretation begins "with the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language "is given its common, ordinary, and accepted meaning." *Id.* If the statute's meaning is plain, there is no ambiguity, and the statute is applied according to its terms. *Id.,* ¶ 46. However, if a statute "is capable of being understood by reasonably well-informed persons in two or more senses," the statute is ambiguous, and we may consult extrinsic sources, such as legislative history. *Id.,* ¶¶ 47–48.

### 2. Statutory disfigurement

¶ 22. A statute providing compensation for disfigurement has been a part of Wisconsin worker's compensation law since 1915.[8] Though various limitations on recovery have been put in place by the original statute and its subsequent amendments, all versions have required that the employee be permanently disfigured; however, none have defined disfigurement.

¶ 23. "[W]ords that are not defined in a statute are to be given their ordinary meanings." *Spiegelberg v. State,* 2006 WI 75, ¶ 19, 291 Wis. 2d 601, 717 N.W.2d 641. In determining the ordinary meaning of undefined words, "[w]e may consult a dictionary to aid in statutory

---

[8] Wis. Stat. § 2394–9(5)(f) (1915).

construction." *Id.* However, consulting a dictionary to ascertain the meaning of undefined words in a statute does not mean that those words are ambiguous. *State v. Sample,* 215 Wis. 2d 487, 499–500, 573 N.W.2d 187 (1998) (citing *State ex rel. Smith v. City of Oak Creek,* 139 Wis. 2d 788, 798 n.6, 407 N.W.2d 901 (1987)).

¶ 24. Webster defines disfigure as "to make less complete, perfect, or beautiful in appearance" and disfigurement as "the state of being disfigured." *Webster's Third New International Dictionary* 649 (1961 ed.). The current version of *Black's Law Dictionary* has a similar definition. It defines disfigurement as "[a]n impairment or injury to the appearance of a person or thing." *Black's Law Dictionary* 501 (8th ed. 2004). A more contemporaneous version of the same publication from 1933 defined disfigurement as "that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." *Black's Legal Dictionary* 589 (3d ed. 1933). This 1933 definition is a quote from a 1923 opinion of the Illinois Supreme Court, wherein it addressed disfigurement under the Illinois workmen's compensation law. *Superior Min. Co. v. Indus. Comm'n,* 141 N.E. 165, 166 (Ill. 1923). Superior was decided only eight years after the Wisconsin disfigurement statute's original enactment. It evidences an interpretation of the term, disfigurement, that is contemporaneous with the creation of the Wisconsin statute that first employed that same term. We also note that while these definitions may differ to some extent, the term, appearance, is a common term in all definitions.

¶ 25. Accordingly, we conclude that the plain meaning of disfigurement encompasses an impairment

that significantly affects the appearance of a person. Though Dane County argues that disfigurement awards historically have been limited to visible burns, scars and amputations, there is nothing inherent in the plain meaning of disfigurement that supports such a restrictive interpretation. Instead, Graham's severe limp and foot drag, in combination with the ALJ findings that "her legs looked imperfect and asymmetrical," constitute a disfigurement under the plain meaning of the term.

¶ 26. However, the statute does not compensate employees for all disfigurements. Rather, there are additional statutory requirements that must be satisfied in order to constitute a statutory disfigurement. All the requirements of Wis. Stat. § 102.56(1) must be met. We shall address these additional statutory requirements below.

3. Statutory history

¶ 27. "A review of statutory history is part of a plain meaning analysis" because it is part of the context in which we interpret statutory terms. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581; *see also Kalal*, 271 Wis. 2d 633, ¶ 52 n.9 (citing Cass R. Sunstein, *Interpreting Statutes in the Regulatory State*, 103 Harv. L. Rev. 405, 430 (1989)). The materials reviewed when considering statutory history consist of "the previously enacted and repealed provisions of a statute." *Richards*, 309 Wis. 2d 541, ¶ 22. "By analyzing the changes the legislature has made over the course of several years, we may be assisted in arriving at the meaning of a statute." *Id.*

¶ 28. The first statutory provision to compensate injured workers for a disfigurement injury under Wis-

consin worker's compensation law was enacted in 1915 as Wis. Stat. § 2394–9(5)(f) (1915), and reads as follows:

> If an employe is seriously permanently disfigured about the face or head, the commission may allow such sum for compensation on account thereof, as it may be deem just, not exceeding seven hundred fifty dollars.

As is apparent from the statutory language, only disfigurements occurring "about the face or head" were compensable. Under this version, Graham's limp that resulted from a leg injury would not satisfy that statutory requirement, and no compensation would be available.

¶ 29. Subsequent revisions to the statute in 1919 and 1923 expanded the language to include those disfigurements occurring "about the face, head, *neck, hand or arm*" (emphasis added), and no longer required that the claimant be "seriously" disfigured, but they also required that disfigurements "occasion loss of wage." *See* Wis. Stat. § 2394–9(5)(f) (1919); Wis. Stat. § 102.09(5)(fn) (1923). Despite this expansion of statutory disfigurements, Graham's injury would not have been compensable because it is not located "about the face, head, neck, hand or arm."

¶ 30. Following the statute's original enactment in 1915, and subsequent revisions in 1919 and 1923, the next major change[9] to the statute occurred in 1971, when the language was amended to read as follows:

> If an employe is so permanently disfigured as to occasion potential loss of wage, the department may

---

[9] Minor revisions in 1931, 1959, and 1969 made cosmetic changes (including renumbering) to the statute, but did not affect its central wording. *See* Wis. Stat. § 102.56 (1931) (renumbering); § 102.56 (1959) (requiring a showing of "potential" wage loss); § 102.56 (1969) (relabeling "commission" as "department").

allow such sum for compensation on account thereof, as it deems just, not exceeding his average annual earnings as defined in s. 102.11.

Wis. Stat. § 102.56 (1971). Compensation for disfigurement under this version of the statute was not limited to any particular area of the body. The only additional statutory requirement was that the disfigurement "occasion potential loss of wage." *Id.*

¶ 31. The 1971 version of the disfigurement statute is not the current version of the disfigurement statute, however, and the subsequent revision in 1978 introduced several additional requirements, narrowing the scope of statutory coverage. The current version of Wis. Stat. § 102.56(1), essentially unchanged from the 1978 version,[10] provides in relevant part:

> If an employee is so permanently disfigured as to occasion potential wage loss, the department may allow such sum as it deems just as compensation therefor . . . . Consideration for disfigurement allowance is confined to those areas of the body that are exposed in the normal course of employment. The department shall also take into account the appearance of the disfigurement, its location, and the likelihood of its exposure in occupations for which the employee is suited.

¶ 32. The statutory history of Wis. Stat. § 102.56(1) demonstrates that a statutory disfigurement award is based on the permanent appearance of

---

[10] There were two amendments to the statute between 1978 and the present that are insignificant for our purposes. In 1987, Wis. Stat. § 102.56 was renumbered as § 102.56(1), and § 102.56(2) was added. § 102.56 (1987–88). In 1999, the word "employe" was changed to "employee." § 102.56(1) (1999–2000).

the employee that he or she presents to others, which appearance may cause others to believe that the worker is less capable. It is not based on an actual permanent loss of functionality of the employee's body, which is compensated under other statutory provisions such as Wis. Stat. §§ 102.52 to 102.555 and Wis. Stat. § 102.565.

4. Requirements of Wis. Stat. § 102.56(1)

¶ 33. Wisconsin Stat. § 102.56(1) contains a number of requirements that must be satisfied before a claimant may be compensated for a statutory disfigurement. However, contrary to the interpretation Dane County urges, none of these requirements limit recovery to situations where the claimant's injuries consist of visible burns, scars or amputations. We will not read into the statute a limitation the plain language does not evidence. *State v. LIRC,* 136 Wis. 2d 281, 288, 401 N.W.2d 585 (1987) ("Worker's compensation acts . . . are not to be interpreted in a manner as to transform their intent or to change their meaning.") (citing *Frisbie v. DILHR,* 45 Wis. 2d 80, 87, 172 N.W.2d 346 (1969)). Furthermore, rather than adopt an interpretation that is more narrow than the plain meaning suggests, worker's compensation statutes are "to be liberally construed to effectuate their stated purpose." *Id.* (citing *Green Bay Packaging, Inc. v. DILHR,* 72 Wis. 2d 26, 37, 240 N.W.2d 422 (1976)).

¶ 34. A purpose of the worker's compensation statute is to "provide prompt justice for injured workers and to prevent, as far as possible, the delays that might arise from protracted litigation." *Bosco v. LIRC,* 2004 WI 77, ¶ 48, 272 Wis. 2d 586, 681 N.W.2d 157 (quoting

*Employers Health Ins. Co. v. Tesmer,* 161 Wis. 2d 733, 738, 469 N.W.2d 203 (Ct. App. 1991)). As a result, an injured employee is guaranteed "recovery irrespective of his own fault and irrespective of the employer's absence of fault." *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980). However, in exchange for this guarantee, the employee is "obliged to accept a limited and scheduled compensation award." *Id.* This is the exclusive remedy available to the employee against the employer.[11] Wis. Stat. § 102.03(2) ("[T]he right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer."). As a result, the statute must be broadly construed in order to best promote its statutory purposes. *Johnson v. Wis. Lumber & Supply Co.,* 203 Wis. 304, 310, 234 N.W. 506 (1931); *see also State v. LIRC,* 136 Wis. 2d at 288. As *Johnson* explained,

> Where an injured workman would, in the absence of the act, have a right of action at common law for damages, his possible damages are no doubt reduced by the application of the act. On the other hand, in a very much larger number of cases, workmen are given compensation where at common law they would be entitled to none. The legislature must have weighed the benefits and detriments of this situation and made the provisions of the law broad and inclusive as it is in order to do the greatest good to the greatest number, and enjoined upon the courts a liberal construction of the act to secure the ends for which it was adopted.

*Johnson,* 203 Wis. at 310. Accordingly, we must reject Dane County's narrow construction of disfigurements as being limited to visible scars, burns or amputations.

---

[11] For claims against third parties see Wis. Stat. § 102.29.

¶ 35. However, although we are to broadly construe worker's compensation statutes, we must also interpret the statute's language "where possible to give reasonable effect to every word, in order to avoid surplusage." *Kalal,* 271 Wis. 2d 633, ¶ 46. Here, the statute contains a number of requirements which must be satisfied before disfigurement compensation will be awarded, and we must give those requirements effect.

¶ 36. First, the statute requires that the employee have a permanent disfigurement. Second, such disfigurement must "occasion potential wage loss . . . tak[ing] into account the age, education, training and previous experience and earnings of the employee, the employee's present occupation and earnings and likelihood of future suitable occupational change." Wis. Stat. § 102.56(1). Third, the disfigurement must occur on an area of the body that is exposed during the normal course of employment. *Id.* Fourth, "the appearance of the disfigurement, its location, and the likelihood of its exposure in occupations for which the employee is suited" must be taken into account in order to determine whether to award compensation. *Id.*

¶ 37. Based on a consideration of these four requirements, compensation will not be available for every disfigurement. However, if these requirements are satisfied, the statute's plain language requires compensation.

C. Application of Wis. Stat. § 102.56(1)

¶ 38. Cognizant of the requirements Wis. Stat. § 102.56(1) has put in place, we apply those require-

317

ments to Graham. First, we have already concluded that Graham's condition is a disfigurement under that term's plain meaning. *Supra,* ¶ 25. In addition, its permanency has been undisputed.

¶ 39. Second, in determining whether Graham's disfigurement will occasion potential wage loss, we note that it was undisputed that several potential employers refused to hire Graham because of her disfigurement. Furthermore, LIRC found that "the look of [Graham's] legs and her altered gait will negatively affect her potential employability and the wage she will earn." LIRC considered the "applicant's age, education, training, previous work experience, previous earning, [and] likelihood of future suitable occupational change" in making its findings. Based on LIRC's factual findings, we conclude that Graham's injury is sufficient to "occasion potential wage loss."

¶ 40. Third, we must determine whether Graham's disfigurement occurs on an area of the body exposed during the normal course of employment. Again, looking to the findings, we note that Graham's "walk was a mixture of a limp and a foot drag, her legs looked imperfect and asymmetrical, and watching her walking with such difficulty was painful." The fact that Graham's legs look "imperfect and asymmetrical" demonstrates that her disfigurement occurs on an area of the body, her legs, that is exposed during the normal course of employment. We note, however, that not every limp will satisfy this requirement, as a limp is merely a motion. Here the limp was combined with a foot drag and "imperfect and asymmetrical" looking legs. This disfigurement was also "exposed in the normal course of employment," and viewing her leg-dragging walk caused discomfort for the

ALJ as he watched Graham walk. It is reasonable to conclude that a prospective employer may experience the same discomfort, thereby negatively affecting Graham's opportunities for employment. The third requirement is satisfied.

¶ 41. Finally, "the appearance of the disfigurement, its location, and the likelihood of its exposure in occupations for which the employee is suited" must be taken into account in order to determine whether to award compensation. Wis. Stat. § 102.56(1). Here, Graham's past occupations as a cook, hotel maid, paper delivery person and companion for those needing assistance involve walking, such that her foot-dragging limp will be apparent. One prospective employer asked her if she had multiple sclerosis or if she had suffered a stroke. In addition, her "legs looked imperfect and asymmetrical." Therefore, Graham's disfigurement satisfies the fourth requirement. All four requirements of § 102.56(1) are fulfilled.

¶ 42. In sum, we conclude that Graham has: (1) a permanent disfigurement (2) that will occasion potential wage loss, (3) which occurs on an area of the body that is exposed during the normal course of employment and (4) that is apparent to current or potential future employers in occupations for which she is suited. Therefore, she has sustained a statutory disfigurement that satisfies all of the requirements of Wis. Stat. § 102.56(1). Accordingly, we affirm the award of $15,000 under the provisions of § 102.56(1).[12]

[12] No party has argued that an award of $15,000 is not reasonable if Graham's permanent disfigurement satisfies the requirements of Wis. Stat. § 102.56(1). Therefore, we have not addressed the amount of the award.

## III. CONCLUSION

¶ 43. The dispositive issue in this case is whether the result of Graham's workplace injury is compensable under Wis. Stat. § 102.56(1). We conclude that LIRC's interpretation of § 102.56(1) is entitled to no deference due to its inconsistent past interpretations that provide no real guidance, but we nevertheless affirm LIRC's order directing that Graham is eligible to receive an award under § 102.56(1) based on the statute's plain meaning as applied to the result of Graham's workplace injury. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority opinion that Graham's workplace injury is compensable under Wis. Stat. § 102.56(1).

I

¶ 45. The majority opinion, at ¶ 36, explains how the worker's compensation remedy provided by Wis. Stat. § 102.56(1) applies to a limp. The limp must be a permanent disfigurement. It must occasion potential wage loss taking into account the age, education, training and previous experience and earnings of the employee; the employee's present occupation and earnings; and the likelihood of future suitable occupational change. Furthermore, the limp must occur on an area of the body that is exposed during the normal course of employment. Finally, the Department of Workforce Development must take into account the appearance of the disfigurement, its location, and the likelihood of its

exposure in occupations for which the employee is suited when determining the award of compensation.

¶ 46. Relating to the requirement that a limp occur on an area of the body that is exposed during the normal course of employment, the majority opinion draws a puzzling distinction between a limp that "occurs on an area of the body" (namely the leg) and a second kind of limp that is "merely a motion." Majority op., ¶ 40. The majority opinion does not explain this distinction or how to determine whether a limp falls into one or the other category. Because I do not understand the distinction, I would not adopt it.

II

¶ 47. Purporting to adopt a plain meaning approach to statutory interpretation, the majority opinion states that " '[a] review of statutory history is part of a plain meaning analysis.' "[1] I do not agree that statutory history is part of a plain meaning analysis.[2]

¶ 48. A statute's meaning is "plain" when the meaning is so readily apparent from the statute's text

---

[1] Majority op., ¶ 27.

[2] A review of repealed statutory provisions is useful because "[b]y analyzing the changes the legislature has made over time, a court may infer [legislative] intent" that is not expressed in the statute's plain text. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 69, 271 Wis. 2d 633, 681 N.W.2d 110 (Abrahamson, C.J., concurring) (footnote omitted).

*See, e.g., Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 979–82, 542 N.W.2d 148 (1996) ("examin[ing] the history of lemon laws in general," as well as the history underlying Wisconsin's lemon law statute, to determine whether to include the purchase price of the car as pecuniary damages under the statute); *Booth v. Churner*, 532 U.S. 731, 739–41 (2001) (although "[e]ach of the parties [argued] that the plain meaning of the [statutory] words 'remedies' and 'available' . . . [was] con-

321

that inquiry beyond the text is unnecessary.[3] In seeking a plain meaning, the court seeks a meaning that anyone—a lawyer, a party, an administrator, or any reader—could discern simply by examining the text of the statute, perhaps with the aid of a dictionary, a book generally available to all.

¶ 49. The majority opinion cites two authorities in support of its position that a plain meaning analysis may encompass the review of statutory history: *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581; and *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 52 n.9, 271 Wis. 2d 633, 681 N.W.2d 110. Neither of the cited authorities supports the proposition that the majority opinion sets forth.

¶ 50. *Richards,* authored by the author of the majority opinion in the present case, cites ¶ 69 of my concurring opinion in *Kalal* (without noting that the cited paragraph appears in my concurrence and not in Justice Sykes' majority opinion) as support for the position that a review of statutory history is part of the plain meaning analysis. *Richards,* 309 Wis. 2d 541, ¶ 22. Nothing in my *Kalal* concurrence states that

trolling," statutory history yielded an inference of Congressional intent that the statute's words did not).

[3] In *State v. Peters,* 2003 WI 88, ¶ 14, 263 Wis. 2d 475, 665 N.W.2d 171, for example, this court characterized the plain meaning analysis as follows: "If the language of a statute is clear on its face, we need not look any further than the statutory text to determine the statute's meaning." *See also State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.") (quotation marks and citation omitted).

statutory history is part of a plain meaning analysis. Rather my *Kalal* concurrence at ¶ 69 (cited by the *Richards* court) provides a "nonexhaustive list of the various forms of 'history,'" including both statutory history and legislative history, "that have been and will be helpful in interpreting a statute."[4]

¶ 51. The majority opinion's second reference is to footnote 9 of the *Kalal* majority opinion, 271 Wis. 2d 633, ¶ 52. *Kalal*'s footnote 9 simply explains the scholarship of Professor Cass Sunstein. Professor Sunstein distinguishes statutory history from legislative history and advocates some degree of caution in relying upon the latter. The *Kalal* majority opinion states neither that statutory history is part of a plain meaning analysis nor that Professor Sunstein considers statutory history to be part of a plain meaning analysis.[5]

¶ 52. For the reasons set forth, I write separately.

¶ 53. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[4] *Kalal,* 271 Wis. 2d 633, ¶ 69 (Abrahamson, C.J., concurring).

[5] In his article, Professor Sunstein characterizes the "plain meaning approach" to statutory interpretation as requiring courts to "rely on the words [in a statute] or on their ordinary meaning . . . ." Cass R. Sunstein, *Interpreting Statutes in the Regulatory State,* 103 Harv. L. Rev. 405, 418–19 (1989). *See also id.* at 410, 416 ("[S]ome courts and observers see the text or 'plain meaning' of statutory language as the exclusive or principal guide to meaning. . . . Some textualists emphasize the 'plain meaning' or dictionary definition of statutory terms; others are more sensitive to the particular settings. . . ."). Professor Sunstein does not suggest that the plain meaning approach to statutory interpretation may incorporate a review of statutory history.