# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:                2019AP1872

Complete Title of Case:

> CITY OF STOUGHTON,
>
>   PLAINTIFF-APPELLANT,
>
>     V.
>
>   ERIK J. OLSON AND CARTER J. SMITH,
>
>   DEFENDANTS-RESPONDENTS.

| | |
|---|---|
| Opinion Filed: | September 3, 2020 |
| Submitted on Briefs: | February 26, 2020 |

| | |
|---|---|
| JUDGES: | Kloppenburg, Graham, and Nashold, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Susan K. Allen* and *Gregory M. Jacobs* of *Stafford Rosenbaum LLP*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the defendants-respondents, the cause was submitted on the brief of *Michele Perreault* of *DeWitt LLP*, Madison. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 3, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP1872**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CV54

**IN COURT OF APPEALS**

---

CITY OF STOUGHTON,

   PLAINTIFF-APPELLANT,

V.

ERIK J. OLSON AND CARTER J. SMITH,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

¶1    GRAHAM, J. This appeal is about the meaning of the term "bowling centers" as it is used in WIS. STAT. § 125.07(3)(a) (2017-18).[1]    That statute generally prohibits anyone under the legal drinking age from entering or being on premises that are licensed to sell alcohol,[2] but it lists many exemptions, including one that allows underage individuals to be on the premises of "bowling centers" that have alcohol licenses.  *See* § 125.07(3)(a)3.

¶2    The parties dispute whether a dedicated bar area within a bowling center is covered by this exemption.  The City of Stoughton contends that any portion of a bowling center that is dedicated primarily to the sale or consumption of alcohol is carved out from the exemption.  The defendants, Erik Olson and Carter Smith, contend that the exemption applies to the entire center, including the bar area on the premises.  We agree with the defendants and therefore affirm the circuit court's order, which dismissed citations that the City issued to the defendants for violating WIS. STAT. § 125.07(3)(a).

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] This prohibition extends only to underage individuals who are not accompanied by a "parent, guardian or spouse who has attained the legal drinking age." WIS. STAT. § 125.07(3)(a). Throughout this opinion, when we refer to "underage individuals," we mean underage individuals who are not accompanied by a parent, legal guardian, or spouse of legal drinking age.

The parties dispute whether the City has shown that the underage individual at issue in this case was not accompanied by a parent, legal guardian, or spouse of legal drinking age. We assume, without deciding, that the individual was not accompanied.

**BACKGROUND**

¶3    Carter Smith owns Viking Lanes, a bowling center[3] in Stoughton that provides places for patrons to bowl, dine, drink, listen to music, and play volleyball and other sports.  Viking Lanes holds a combination Class B alcohol license permitting it to sell alcoholic beverages for consumption on the premises.  *See* WIS. STAT. § 125.51(3).  The alcohol license covers the entire Viking Lanes building.

¶4    In 2017, a Stoughton police officer encountered an underage individual playing pool in what the officer described as a "bar area" within the Viking Lanes center.  Nothing in the record suggests that the officer observed the individual purchase or consume alcohol.  The officer issued a citation to Smith, as well as to Erik Olson, who was tending the bar area at the time, for violating a Stoughton ordinance that adopted WIS. STAT. § 125.07(3).[4]  *See* § 125.07(3)(b) (authorizing penalties against a "licensee or permittee who directly or indirectly permits an underage person to enter or be on a licensed premises in violation of par. (a).").  The statute and Stoughton's ordinance also authorize officers to cite underage individuals for violating the prohibition on entering a licensed premises, *see* § 125.07(4)(a)3., but nothing in the record indicates that the officer issued such a citation to the underage individual in this case.

---

[3] Although the City argues that certain portions of the Viking Lanes premises do not qualify for the "bowling center" exemption listed in WIS. STAT. § 125.07(3)(a)3., the City does not dispute that Viking Lanes is a bowling center.

[4] STOUGHTON, WI GEN. CODE § 14-33 (2017) makes any violation of WIS. STAT. § 125.07 a municipal violation.

3

¶5    The city municipal court found Smith and Olson guilty of violating Stoughton's ordinance, and both defendants appealed to the circuit court, where their separate cases were consolidated. The defendants argued that there was no basis for the citations because the bar area in Viking Lanes is covered by the statutory exemption for "bowling centers." The City argued that the exemption does not apply to any portion of the premises dedicated primarily to the sale or consumption of alcohol. For this proposition, the City relied on *State v. Ludwig*, 31 Wis. 2d 690, 143 N.W.2d 548 (1966), an opinion that interpreted an earlier version of the statute and concluded that an exemption for "bowling alleys" did not apply to a "barroom" that was under the same roof as a bowling alley. *Id.* at 698.

¶6    The circuit court determined that the statutory exemption for "bowling centers" covers the "entire facility"—not just the part of the center where individuals "engage in bowling." Based on this interpretation of the statute, the court entered an order dismissing the citations, and the City appeals.

## DISCUSSION

¶7    This case presents a matter of statutory interpretation, a question of law that appellate courts review de novo. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852. When interpreting a statute, we begin with its language, *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110, and we consider the "scope, context, and purpose" of that language, *id.*, ¶48. We also examine the history of a statute and case law interpreting it to determine the meaning of words. *Force ex rel. Welcenbach v. American Family Mut. Ins. Co.*, 2014 WI 82, ¶31, 356 Wis. 2d 582, 850 N.W.2d 866.

¶8      The prohibition at issue is found in WIS. STAT. § 125.07(3)(a), which states in pertinent part:  "An underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age may not enter, knowingly attempt to enter or be on any premises for which a license or permit for the retail sale of alcohol beverages has been issued."  The exemption for "bowling centers" is found in § 125.07(3)(a)3., which is set forth in full in footnote 7 below.

¶9      The City argues that the circuit court dismissed the citations based on an incorrect interpretation of WIS. STAT. § 125.07(3)(a), and that the "bowling centers" exemption does not apply to any portion of the premises that is dedicated primarily to the sale or consumption of alcohol.  The defendants disagree.  They argue that § 125.07(3)(a) means what it appears to say—that underage individuals may be present in any portion of a bowling center that is licensed to sell and serve alcohol.

¶10     Both parties' arguments focus on the statutory history of WIS. STAT. § 125.07(3)(a) and on *Ludwig*, a 1966 decision of our supreme court that interpreted an earlier version of the exemptions now found in § 125.07(3)(a).  *See Ludwig*, 31 Wis. 2d at 696-98 (interpreting WIS. STAT. § 66.054(19) (1965-66), a predecessor to the modern § 125.07(3)(a)); *see also* 1981 Wis. Laws, ch. 79, § 8, at 670-74 (revising and recodifying the statute).  It is helpful to begin with an overview of this history, so that the parties' arguments can be put into context.

I.  **The *Ludwig* Decision and the Statutory History of WIS. STAT. § 125.07**

¶11     At the time *Ludwig* was decided, the statute had the same general structure as the current version:  a broad prohibition on underage individuals entering or being on premises licensed to sell alcohol, and a list of specific exemptions to that prohibition.  *See Ludwig*, 31 Wis. 2d at 697 (discussing WIS.

STAT. § 66.054(19) (1965-66)). At that time, the statute listed just ten exemptions, including an exemption for "bowling alleys." *See id.* at 692 (reproducing the statutory text).[5]

¶12 The issue in *Ludwig* was whether the owner of a licensed establishment violated WIS. STAT. § 66.054(19) (1965-66) by allowing minors to frequent a "barroom area" associated with the bowling alley.[6] *Ludwig*, 31 Wis. 2d at 691-93. Ludwig owned the establishment, which consisted of "a bowling alley portion, barroom portion, and restaurant portion all under one roof." *Id.* at 693. Ludwig argued that because her establishment contained "bowling alleys," the entire premises was "covered by the bowling alley exemption." *Id.* at 696.

¶13 Our supreme court disagreed with Ludwig's interpretation based on its examination of the physical layout of Ludwig's establishment and the purpose of the statute. Regarding the layout, the court noted that the barroom and the restaurant were physically separate from the "bowling alley area," and that "there

---

[5] The ten exemptions in WIS. STAT. § 66.054(19) (1965-66) were as follows:

> This subsection shall not apply to hotels, drug stores, grocery stores, bowling alleys, premises in the state fair park, concessions authorized on state-owned premises in the state parks and state forests ..., parks owned or operated by agricultural societies receiving state aid, cars operated on any railroad, regularly established athletic fields or stadiums nor to premises operated under both a 'Class B' license and a restaurant permit where the principal business conducted therein is that of a restaurant.

[6] The court in *Ludwig* uses the term "minors," reflecting that at the time of the decision, the legal drinking age in Wisconsin was 18. Except when recounting the holding and analysis in *Ludwig*, we use the term "underage individuals" in this opinion because the legal drinking age and the age of majority are no longer the same.

can be no question over one's presence in the barroom, the bowling alley area, or the restaurant." *Id.* at 698.

¶14    Regarding the purpose of the statute, the court explained that the overall purpose was to prevent minors from being exposed to establishments where alcohol is sold and consumed, and that the purpose of the exemptions was to avoid imposing "an undue burden" upon minors in their "attempt to enjoy entertainment, travel, and the like." *Id.* at 697. The court found support in the scope of the prohibition, which was "broad," while the exemptions were "narrow, including only a short list of specific instances where minors may legally be on the premises." *Id.* The court also found support in an earlier Wisconsin Attorney General opinion, which interpreted the same statutory language and concluded that a "barroom" in a separate room behind a grocery store was not covered by the grocery store exemption. *Id.* at 698 (discussing Wis. 41 Op. Att'y Gen. 340 (1952)). For these reasons, the court ultimately concluded that the statute does not "create a bowling alley out of that which is obviously a tavern or barroom," and that the "bowling alleys" exemption did not extend to the "barroom" portion of Ludwig's establishment. *Id.* at 697-98.

¶15    Since ***Ludwig*** was decided in 1966, the Wisconsin legislature has made many changes to the statute. In 1981, the legislature revised and recodified the statute as WIS. STAT. § 125.07. *See* 1981 Wis. Laws, ch. 79, § 8, at 671. In the process, it significantly expanded the list of exemptions to the general rule prohibiting underage individuals from entering premises that hold alcohol licenses. *See id.* (adding, among other things, exemptions for "ski chalets" and "golf clubhouses"). Since then, the legislature has repeatedly amended the statute to add even more exemptions. For example, 1989 Wis. Act 253, § 17 added exemptions for "service stations," "vessels," and "golf courses," and 1995 Wis. Act 334 added

exemptions for "indoor golf simulator facilities" and "outdoor volleyball courts that are contiguous to a licensed premises."

¶16    For our purposes, the most significant change was enacted by 1991 Wis. Act 28.  This act replaced the exemption for "bowling alleys" with an exemption for "bowling centers."    *Id.*, § 4 (amending WIS. STAT. § 125.07(3)(a)3.).  It also changed the term "bowling alleys" to "bowling centers" in WIS. STAT. § 60.23(10), which addresses the authority of town boards to regulate and license bowling centers; in WIS. STAT. § 101.123, which addresses prohibitions on smoking in certain establishments; and in other subsections of WIS. STAT. ch. 125, which generally addresses the regulation of alcoholic beverages.  *See* 1991 Wis. Act 28, §§1-3, 5, 6.

¶17    The current WIS. STAT. § 125.07(3)(a)3., which contains the "bowling centers" exemption, now provides seventeen discrete exemptions.[7] There are also many new subdivisions of § 125.07(3)(a) that contain additional

---

[7] The seventeen exemptions in the current version of WIS. STAT. § 125.07(3)(a)3. are as follows:

> Hotels, drug stores, grocery stores, bowling centers, movie theaters, painting studios, billiards centers having on the premises 12 or more billiards tables that are not designed for coin operation and that are 8 feet or longer in length, indoor golf simulator facilities, indoor golf and baseball facilities on premises for which the only alcohol beverage license issued is a Class "B" license, service stations, vessels, cars operated by any railroad, regularly established athletic fields, outdoor volleyball courts that are contiguous to a licensed premises, stadiums, music festival venues during an event with a projected attendance of at least 2,500 persons, public facilities as defined in s. 125.51(5)(b)1.d. which are owned by a county or municipality or centers for the visual or performing arts.

exemptions, most of which were not present when *Ludwig* was decided. *Compare* WIS. STAT. § 66.054(19) (1965-66) *with* § 125.07(3)(a) (listing many new exemptions in subdivisions 1. through 16.). Most of these exemptions cover specified premises, such as the exemption for "premises having an indoor volleyball court" that is found in § 125.07(3)(a)3m. Others are purely situational, such as the exemption for underage individuals assisting law enforcement with investigations that is found in § 125.07(3)(a)15. In total, the current version of the statute contains twenty subdivisions that, like § 125.07(3)(a)3., provide exemptions from the general prohibition against underage individuals entering premises that hold alcohol licenses.

## II. "Bowling Centers" as Used in WIS. STAT. § 125.07(3)(a)

¶18    Having described *Ludwig*'s interpretation of the predecessor statute and the amendments to the statute since that decision, we now address whether the current exemption for "bowling centers" includes the bar area in Viking Lanes.

¶19    When the legislature amends a statute, "there is a presumption that the legislature intends to change the law by creating a new right or withdrawing an existing right." *Lang v. Lang*, 161 Wis. 2d 210, 220, 467 N.W.2d 772 (1991). Here, we presume that when the legislature replaced the exemption for "bowling alleys" with an exemption for "bowling centers," it intended to set forth different legal rights—though other considerations might rebut this presumption. *See, e.g.*, *Buettner v. Wisconsin Dep't of Health & Family Servs.*, 2003 WI App 90, ¶16, 264 Wis. 2d 700, 663 N.W.2d 282 (noting that some amendments might be meant to clarify, rather than substantively alter, the statutory scheme).

¶20    The defendants argue that "bowling centers" is a "more expansive" term than "bowling alleys," and the City seems to agree. According to the City,

the legislature amended the language in the statute "to acknowledge that bowling alleys have evolved and expanded over time to include other entertainment activities." We agree with the parties and the circuit court that the term "bowling centers" is broader than "bowling alleys," and that it describes premises that may offer activities besides bowling.

¶21 The defendants argue that based on common meaning, a bowling center would include all areas within a bowling center, without regard to the primary purpose of any given area. *See Kalal*, 271 Wis. 2d 633, ¶45 (when interpreting a statute, we usually give words their "common, ordinary, and accepted" meanings). We agree that the plain language of the statute indicates that the exemption for "bowling centers" includes all areas within a bowling center.

¶22 Although the City acknowledges that the term "bowling centers" contemplates a facility that offers other activities beyond bowling, it nevertheless argues that the exemption cannot extend to any portion of a center that is dedicated primarily to the sale or consumption of alcohol. The City does not point to any express language of the exemption that supports its interpretation. It instead relies primarily on its reading of *Ludwig*, 31 Wis. 2d 690, and the purpose of WIS. STAT. § 125.07(3)(a). We address these arguments in turn.

¶23 According to the City, *Ludwig* stands for the proposition that underage individuals "may frequent portions of [licensed] facilities dedicated to recreational or entertainment purposes but … are restricted from frequenting portions of those same facilities that are dedicated primarily to the sale or consumption of alcohol." Stated differently, the City argues that *Ludwig*

10

recognized a carve-out to the exemptions for "any portion" of a licensed premise that is "dedicated primarily to the sale or consumption of alcoholic beverages."[8] As we understand it, the City's interpretation of *Ludwig* would extend to *all* of the premises exemptions set forth in WIS. STAT. § 125.07(3)(a)—not just the prior exemption for "bowling alleys" and the current exemption for "bowling centers."

¶24　We disagree with the City's interpretation of *Ludwig* for three reasons.

¶25　First, *Ludwig* did not address a situation where a "portion" of the exempted premises was dedicated primarily to the sale or consumption of alcohol. It instead addressed a situation where the exempted premises, a "bowling alley," was "under the same roof as" but separate from a "barroom," *Ludwig*, 31 Wis. 2d at 693, and there was "no question" as to whether an individual was in one or the other, *id.* at 698. The court explained that the statute did not "create a bowling alley out of that which is obviously a tavern or barroom," and it differentiated between the bowling alley (which was exempt based on the plain language of the statute) and the barroom (which was not). *Id.* at 697. Therefore, *Ludwig* did not carve out a portion of the "bowling alley" from the exemption, as the City claims. It instead concluded that a barroom that was under the same roof as but distinct from a bowling alley could not take advantage of the bowling alley exemption.

¶26　Second, the statutory history of WIS. STAT. § 125.07(3)(a) shows that the City's reading of *Ludwig* is incorrect. If, under *Ludwig*, the premises

---

[8] Although the City describes this carve-out as "well-established," the only authorities it cites for this proposition are the 1966 *Ludwig* decision, which we discuss and distinguish in this opinion, and a 1952 opinion of the Wisconsin Attorney General, which we address at n.11, below.

exemptions listed in § 125.07(3)(a) already exclude any portion of those premises dedicated primarily to the sale or consumption of alcohol, then the legislature would have no need to include statutory language to that effect when it adds new exemptions.[9]  But the legislature *has* included such language since ***Ludwig*** was decided.  In 1998, when the legislature added an exemption for "[p]remises having an indoor volleyball court that measures at least 9 meters by 18 meters in area," it specified that this exemption "does not authorize an underage person to loiter in any room that is primarily used for the sale and consumption of alcohol beverages."  1998 Wis. Act 98 (enacting § 125.07(3)(a)3m.).  If the City's reading of ***Ludwig*** were correct, the statutory language specifying that this exemption does not extend to "any room primarily used for the sale and consumption of alcohol beverages" would be mere surplusage.  *See **Kalal***, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").[10]

¶27     Finally, the City's reading of ***Ludwig*** would render some of the exemptions in WIS. STAT. § 125.07(3)(a) meaningless.  For example, § 125.07(3)(a)13. and 16. allow underage individuals participating in a brewery or winery tour to be present "in a banquet or hospitality room" of the brewery or winery.  It is beyond reasonable dispute that hospitality rooms in breweries and

---

[9] *See **Czapinski v. St. Francis Hosp., Inc.***, 2000 WI 80, ¶22, 236 Wis. 2d 316, 613 N.W.2d 120 ("[T]he legislature is presumed to act with knowledge of the existing case law." (quoting ***Ziulkowski v. Nierengarten***, 210 Wis. 2d 98, 104, 565 N.W.2d 164 (Ct. App. 1997))).

[10] The City argues that this language "only affirms" that its interpretation of ***Ludwig*** is correct.  But we do not see why the legislature would "affirm" the existence of a carve-out to the exemptions in WIS. STAT. § 125.07(3)(a) by enacting an exemption that reads as if that carve-out did not already exist in the statute.

wineries are usually—if not always—dedicated primarily to the sale or consumption of alcohol. But if the City's reading of *Ludwig* were correct, underage individuals would be prohibited from entering these rooms, despite the plain language of these statutory exemptions. We avoid interpretations that would "render provisions meaningless," *Belding v. Demoulin*, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373, and the City's interpretation of *Ludwig* would render these exemptions meaningless.

¶28    For these reasons, we reject the City's position that, under *Ludwig*, any portions of premises dedicated primarily to the sale or consumption of alcohol are carved out from premises exemptions listed in WIS. STAT. § 125.07(3)(a).

¶29    We now turn to the City's arguments about the purpose of the statute. According to the City, the reason that the "bowling centers" exemption cannot extend to any portion of those centers dedicated primarily to the sale or consumption of alcohol is because the purpose of the statute is to protect underage individuals from "environments predominantly designed for the sale and consumption" of alcohol. We reject this argument for the reasons that follow.

¶30    As *Ludwig* explains, the purpose of WIS. STAT. § 125.07(3)(a) is not solely to prohibit underage individuals from entering places where alcohol is sold or consumed. By including exemptions, the legislature balanced that purpose against another purpose: to avoid imposing "an undue burden upon" underage individuals in their "attempt to enjoy entertainment, travel, and the like." *Ludwig*, 31 Wis. 2d at 697.

¶31    The statutory history of WIS. STAT. § 125.07(3)(a) shows that the balance between these purposes has shifted since *Ludwig* was decided. At that time, the statute contained just ten "specific instances where minors may legally

be on the premises, although licensed," leading *Ludwig* to describe the exemptions as "narrow." *Ludwig*, 31 Wis. 2d at 697. But since that time, the legislature has repeatedly acted to expand the list of exemptions, and the current statute's numerous exemptions span twenty subdivisions. By greatly expanding the number of exemptions, the legislature has placed greater emphasis on the purpose of the exemptions, which is to avoid imposing an "undue burden" on underage individuals' opportunities for travel and entertainment.

¶32 For these reasons, we are not persuaded that it would defeat the purposes of the statute to interpret "bowling centers" to include portions of those centers dedicated to the sale and consumption of alcohol. We note that our interpretation of the statute does not leave municipalities without tools to prevent underage drinking. Among other things, municipalities can issue citations to license holders that serve alcohol to underage individuals, *see* WIS. STAT. § 125.07(1); they can cite underage individuals for procuring or attempting to procure alcohol, *see* § 125.07(4)(a)1.; and they can cite underage individuals for possessing or consuming alcohol, *see* § 125.07(4)(a)2.

¶33 In sum, nothing in the plain language of the statute supports the City's argument that the exemption for "bowling centers" excludes any portion of a bowling center that is dedicated primarily to the sale or consumption of alcohol. And, as explained above, interpreting the exemptions in WIS. STAT. § 125.07(3)(a) to contain such carve-outs would render some of the statute's provisions superfluous and other provisions meaningless. The City's interpretation is based on an overly broad reading of *Ludwig* and an overly narrow view of the statute's

purposes and we conclude that it is unreasonable.[11] We agree with the defendants and conclude that the exemption for "bowling centers" does not exclude portions of a bowling center that are dedicated primarily to the sale or consumption of alcohol.[12]

## CONCLUSION

¶34 For all these reasons, we conclude that the exemption for "bowling centers" in WIS. STAT. § 125.07(3)(a)3. extends to the entire Viking Lanes center,

---

[11] The City asks us to consider the 1952 Wisconsin Attorney General opinion cited in *Ludwig* and the legislative history of 1991 Wis. Act 28. Even if we were to consider these sources, they would not change our conclusion.

The Attorney General opinion, 41 Wis. Op. Att'y Gen. 340 (1952), is unpersuasive for substantially the same reasons that lead us to reject the City's arguments about *Ludwig*. The Attorney General concluded that, under WIS. STAT. § 66.054(19) (1951-52), a "barroom" that was under the same roof as but physically separated from a "grocery store" was not covered by the grocery store exemption. 41 Wis. Op. Att'y Gen. 340, 342. Like *Ludwig*, the Attorney General analyzed the exempted premises and the barroom as two distinct areas, *id.*, and did not address a broad phrase like "bowling centers" which can naturally encompass portions of the premises where alcohol is served. And also like *Ludwig*, the opinion interprets an early version of the statute that predates the legislative decision to greatly increase the number of exemptions, thereby shifting the balance of the statute's purposes.

Turning to legislative history, the City points to the lack of any clear statement of purpose in the legislative history of 1991 Wis. Act 28, and it asserts that the legislature must not have meant to "significantly expand" the exemption for "bowling alleys" by amending it to "bowling centers." However, as explained above, the fact that the legislature amended the statute is by itself evidence that the legislature intended "to change the law by creating a new right or withdrawing an existing right." *Lang v. Lang*, 161 Wis. 2d 210, 220, 467 N.W.2d 772 (1991). The lack of a purpose statement is not compelling evidence of the legislature's purpose.

[12] Because our statutory interpretation analysis is dispositive, we do not address the defendants' arguments that the City's interpretation would render WIS. STAT. § 125.07(3)(a)3. unconstitutionally vague. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

including the bar area on the premises. Accordingly, we affirm the circuit court order dismissing the defendants' citations.

*By the Court.*—Order affirmed.